Rebekah C. Millard, OSB #121199
rmillard@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA  98507
Tel: 360.956.3482
Fax: 360.352.1874

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| **Joshua Williams**, *et al.,* | Case No. 6:21-cv-01332-AA |
| Plaintiffs, | **FIRST AMENDED VERIFIED COMPLAINT** |
| v. | **Violation of Civil Rights;** |
| **Kate Brown**, *et al.,* | |
| Defendants. | **Demand for Jury Trial** |

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

# INTRODUCTION

1.      Oregon Governor Kate Brown issued Executive Order No. 21-29 August 13, 2021, and the Oregon Health Authority issued two Temporary Rules August 25, 2021. Through these rules, the State requires Plaintiffs, as a condition of continued employment, to accept a vaccine injected into their body without their consent. These rules deprive Plaintiffs of their ability to refuse unwanted medical care in violation of their constitutional right to privacy, bodily autonomy, and personal liberty.

2.      Plaintiffs have already contracted COVID-19, and recovered, and have natural immunity to the virus at least as robust, durable, and long-lasting as that artificially achieved through vaccination.[1]

3.      The State has no compelling interest in coercing Plaintiffs into taking a COVID-19 vaccine, because Oregon has no compelling interest in treating employees with natural immunity any differently from employees who obtained immunity from a vaccine, nor is mandatory vaccination an appropriate least-restrictive means for the State to achieve any compelling interest.

## Jurisdiction and Venue

4.      This action arises under federal law, including the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983 and 1988, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiff by the Constitution of the United States.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

---

[1] *See e.g.,* Jocelyn Solis-Moreira, *Does SARS-CoV-2 natural infection immunity better protect against the Delta variant than vaccination*? August 30 2021, https://www.news-medical.net/news/20210830/Does-SARS-CoV-2-natural-infection-immunity-better-protect-against-the-Delta-variant-than-vaccination.aspx.



P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

6.     This action is an actual controversy in which Plaintiffs seek a declaration of their rights under the Constitution of the United States. Pursuant to 28 U.S.C. §§ 2201-2202, this Court may declare the rights of Plaintiffs and grant further necessary and proper relief based thereon, including injunctive relief pursuant to Federal Rule of Civil Procedure 65.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the claims arise in this judicial district and Defendants operate and do business in this judicial district.

8.     Because a substantial part of the events giving rise to these claims occurred in counties covered by the Eugene Division, assignment to that Division is proper. L.R. 3-2.

## FACTS

### The Coronavirus Pandemic and COVID-19 Vaccines

9.     The novel coronavirus SARS-CoV-2, which can cause the disease COVID-19, presents a significant risk primarily to individuals aged 70 or older and those with comorbidities such as obesity and diabetes. The World Health Organization ("WHO") concluded that the survival rate for COVID-19 patients under 70 years of age was 99.95% in a meta-analysis of data world-wide. Centers for Disease Control and Prevention, COVID-19 Pandemic Planning Scenarios, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html.

10.     The Centers for Disease Control ("CDC") estimates that the survival rate for young adults between 20 and 49 is 99.95% and for people ages 50-64 is 99.4%. *Id*.

11.     As of August 23, 2021, the FDA has granted approval for one vaccination for individuals over the age of sixteen, Pfizer-BioNTech (marketed as Comirnaty https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-19-vaccine).

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

12. The remaining vaccines, the Moderna vaccine and the Johnson and Johnson vaccine are approved for use only under Emergency Use Authorization, meaning they have not gone through the typical six stages: (1) exploratory; (2) preclinical (animal testing); (3) clinical (human trials); (4) regulatory review and approval; (5) manufacturing; and (6) quality control. See Vaccine Testing and the Approval Process, CDC (May 1, 2014), available at https://bit.ly/3rGkG2s (last visited September 9, 2021).

13. Recent research indicates that vaccination presents a heightened risk of adverse side effects—including serious ones—to those who have previously contracted and recovered from COVID-19. The heightened risk of adverse effects results from "preexisting immunity to SARSCov-2 [that] may trigger unexpectedly intense, albeit relatively rare, inflammatory and thrombotic reactions in previously immunized and predisposed individuals." *Angeli et al.*, SARS-CoV-2 Vaccines: Lights and Shadows, 88 EUR. J. INTERNAL MED. 1, 8 (2021).

## Oregon's Vaccine Mandates

14. The Oregon Health Authority issued a Temporary Administrative Order requiring proof of SARS-CoV-2 ("COVID-19") vaccination for all individuals who work in healthcare settings, including temporary sites where healthcare is delivered ("provider vaccine mandate"). *See* Exhibit A, OAR 333-019-1010, dated August 25, 2021.

15. The Oregon Health Authority issued a Temporary Administrative Order requiring proof of SARS-CoV-2 vaccination for all individuals who work in schools ("school vaccine mandate"). *See* Exhibit B, OAR 333-019-1030, dated August 25, 2021.

16. The vaccine mandates require all employers to ensure that their employees have received a vaccination by October 18, 2021, meaning the employer must have proof of vaccination

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

of all staff by that time or face civil penalties of $500 per day per violation. OAR 333-019-1010(5) and (8); OAR 333-019-1030(6) and (15).

17.     On August 13, 2021, Governor Kate Brown issued Executive Order No. 21-29 which, after October 18, 2021, prohibits employees from working for Executive Branch Agencies unless fully vaccinated. Executive Order No 21-29 (2). The mandate requires that "On or before October 18, 2021…[all Executive Branch] Employees must provide their employer with either (a) proof of vaccination … or (b) a written request for exception…" Executive Order No 21-29 (3). Penalties for noncompliance include "personnel consequences up to and including separation from employment." Executive Order No 21-29 (7). Exhibit C.

18.     No exception to these mandates exists for persons who have already achieved immunity to COVID-19 by recovering from the virus. In fact, information provided by OHA indicates "Proof of history of COVID-19 disease as a substitute for vaccination is not allowed under the rule." See Healthcare Provider and Healthcare Staff Vaccine Rule FAQs (Updated 9-02-2021) available at https://sharedsystems.dhsoha.state.or.us/DHSForms/Served/le3879.pdf.

**The Parties**

19.     Plaintiff **Joshua Williams** resides in Marion County, Oregon. He has been a licensed EMT since 1996. He has served in his current position as station chief at Aurora Fire and Rescue since 2018.

20.     Throughout 2020-2021, Mr. Williams provided emergency and rescue services to the greater Aurora community, including emergency care for individuals with COVID-19, including individuals who were not aware at the time that they were positive for COVID-19.

21.     At all times, Mr. Williams followed applicable health and safety protocols and safety precautions.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

22.     Mr. Williams fell ill on or near January 9, 2021, and subsequently tested positive for SARS-CoV-2. He followed protocols for quarantine and testing and is now fully recovered from the virus.

23.     Because he has fully recovered from COVID-19, Mr. Williams has acquired robust natural immunity, as confirmed by an antibody test on September 16, 2021.

24.     Based on his naturally acquired immunity, it is medically unnecessary for Mr. Williams to undergo a vaccination procedure at this point (which fact also renders the procedure and any attendant risks medically unethical).

25.     Plaintiff **Jennifer Lewis** resides in Klamath County, Oregon. She is currently employed as Office Manager and Treatment Coordinator for Klamath Falls Orthodontics. She has worked at her current position since 2013.

26.     From May of 2020, Klamath Falls Orthodontics opened for care for patients. Throughout the remainder of 2020 until the present, Ms. Lewis provided orthodontic care for patients following all applicable health and safety protocols and safety precautions.

27.     On December 5, 2020, Ms. Lewis received a positive test for COVID-19 after feeling unwell.

28.     Ms. Lewis observed quarantine as required by local health regulations, and fully recovered.

29.     On August 18, 2021, Ms. Lewis received a test for SARS-CoV-2 antibodies, which demonstrated that she has acquired robust natural immunity.

30.     Based on her naturally acquired immunity, it is medically unnecessary for Ms. Lewis to undergo a vaccination procedure at this point (which fact also renders the procedure and any attendant risks medically unethical).

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

31.     Plaintiff **Michael Miller** resides in Canyon County, Idaho. He works for the Oregon Department of Corrections as a Correctional Officer where he has served since January of 2013.

32.     He fell ill and tested positive for COVID-19 in November of 2020.

33.     After observing the time required for quarantine, Mr. Miller worked as usual during 2020-2021.

34.     On September 1, 2021, Mr. Miller received the results of a lab test indicating that he has COVID-19 antibodies providing natural immunity.

35.     Mr. Miller objects to obtaining the vaccination because of his natural immunity, and the risks inherent in the vaccine.

36.     Mr. Miller fears losing his employment because his employer, the Department of Corrections, is enforcing the Governor's vaccination mandate. No exception to this mandate applies for corrections employees who have natural immunity.

37.     Plaintiff **Phillip Kearney** resides in Clackamas County, Oregon. He works for the Oregon Department of Justice as an Assistant Special Agent in Charge of an investigatory unit.

38.     Mr. Phillips fell ill and tested positive for COVID-19 in the spring of 2021.

39.     After observing the time required for quarantine, Mr. Kearney worked as usual during 2020-2021.

40.     Mr. Kearney objects to receiving the COVID-19 vaccination because he has natural immunity. He further has a moral objection to the vaccination for which he has requested an accommodation of his employer. He has received no response from his employer as to their ability to accommodate his moral objection, and fears that with time passing, he may be terminated from his employment.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

41.     Plaintiff **Jay Hicks** resides in Malheur County, Oregon. He works for the Oregon Department of Corrections as a Correctional Officer where he has served since February of 1999.

42.     He fell ill and tested positive for COVID-19 in September of 2020.

43.     After observing the time required for quarantine, Mr. Hicks worked as usual during 2020-2021.

44.     On August 20, 2021, Mr. Hicks received the results of a lab test indicating that he currently has robust COVID-19 antibodies providing natural immunity.

45.     Mr. Hicks objects to obtaining the vaccination because of his natural immunity, and the risks inherent in the vaccine. His doctor has advised him that it is medically unnecessary to obtain the COVID-19 vaccination, and that his decision not to get the vaccine is medically advisable.

46.     Mr. Hicks fears losing his employment because his employer, the Department of Corrections, is enforcing the Governor's vaccination mandate. No exception to this mandate applies for corrections employees who have natural immunity.

47.     Plaintiff **Janna Cochran** resides in Washington County, Oregon. She has worked for the Willamette Education Service District since 2003 as an Early Intervention Early Childhood Special Education Teacher.

48.     Ms. Cochran fell ill with COVID-19 in July of 2020, including symptoms such as fever, loss of taste and smell, fatigue and shortness of breath. Ms. Cochran observed required quarantine.

49.     On September 13, 2021, Ms. Cochran received the results of a lab test indicating that she currently has robust COVID-19 antibodies providing natural immunity.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

50.     Ms. Cochran objects to undergoing the vaccination because of the risks inherent in the procedure, and because her natural immunity provides protection for herself and others against risk of infection. For this reason, it is medically unnecessary for Ms. Cochran to obtain a vaccination.

51.     Ms. Cochran also has sincere moral objections to taking the COVID-19 vaccination and has submitted a request for religious accommodation to her employer, Willamette Education Service District. However, Ms. Cochran has not received a response from her employer.

52.      Ms. Cochran fears losing her employment because her employer is enforcing the Governor's school vaccination mandate and has told Ms. Cochran that she must obtain a vaccination by October 4, 2021. No exception to this mandate applies for teachers who have natural immunity.

53.     Plaintiff **Julie Ann Suderman** resides in Marion County, Oregon. She works in education.

54.     Ms. Suderman fell ill with COVID-19 in November of 2020, and observed the required quarantine.

55.     On September 21, 2021, Ms. Suderman received the results of a lab test indicating that she currently has robust COVID-19 antibodies providing natural immunity.

56.     Ms. Suderman objects to undergoing the vaccination because of the risks inherent in the procedure, and because her natural immunity provides protection for herself and others against risk of infection. For this reason, it is medically unnecessary for Ms. Suderman to obtain a vaccination.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

57.     Ms. Suderman's personal physician agrees that her tests indicate natural immunity and that it is medically unnecessary for her to obtain the vaccination, and recommended against her getting it.

58.     Nonetheless, Ms. Suderman's employer has informed her that she must obtain the vaccination by October 4, 2021, or risk losing her employment. Ms. Suderman's employer is enforcing the Governor's school vaccination mandate. No exception to this mandate applies for teachers who have natural immunity.

59.     Defendant **Kate Brown** is the Governor of the State of Oregon and is sued in her official capacity.

60.     Defendant **Patrick Allen** is the Director of the Oregon Health Authority and is sued in his official capacity.

61.     Defendant the **Oregon Health Authority** whose address is 500 Summer Street, NE, E-20, Salem, OR 97301-1097is the state agency responsible for issuing the vaccine mandate.

### Studies Show Naturally Acquired Immunity from COVID-19
### Prior Infection Is At Least As Robust as Vaccine-Acquired Immunity.

62.     Naturally acquired immunity developed after recovery from COVID-19 provides broad protection against severe disease from subsequent SARS-CoV-2 infection.

63.     Just because an individual is vaccinated does not guarantee he is immune and just because he is not vaccinated does not mean he is not immune. Instead of focusing its policy on blanket vaccination, therefore, a reasonably tailored policy would focus on immunity, regardless of how it is obtained.

64.     There is an emerging consensus in clinical literature on the protective benefits of natural immunity, and there are elevated risks in indiscriminately vaccinating  individuals who have natural immunity. Indeed, the European Union has taken this approach. Julia Buckley, EU

FREEDOM
FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Digital Covid Certificate: Everything you need to know, CNN.COM (June 9, 2021), https://www.cnn.com/travel/article/eu-covid-certificate-travel-explainer/index.html.

65.     Multiple extensive, peer-reviewed studies comparing naturally acquired and vaccine-acquired immunity have concluded overwhelmingly that the former provides equivalent or greater protection against severe infection than immunity generated by mRNA vaccines (Pfizer and Moderna). These studies confirm the efficacy of natural immunity against reinfection of COVID-19 and show that almost all reinfections are less severe than first-time infections and almost never require hospitalization. Even those vaccinated can have reinfections, and those incidents are no less severe than those reinfections for the naturally immune.

66.     Given that there is currently more data on the durability of natural immunity than there is for vaccine immunity, researchers rely on the expected durability of natural immunity to predict that of vaccine immunity. Heidi Ledford, *Six months of COVID vaccines: what 1.7 billion doses hove taught scientists*, 594 NATURE 164 (June 10, 2021), https://www.nature.com/articles/d41586-021-01505-x (study notes that "Six months is not much time to collect data on how durable vaccine responses will be…. In the meantime some researchers are looking to natural immunity as a guide.").

67.     Studies have demonstrated prolonged immunity for those recovered from COVID-19 with respect to memory T- and B cells, bone marrow plasma cells, spike-specific neutralizing antibodies, and IgG+ memory B-cells following a COVID-19 infection. Dr. Harvey Risch, Yale School of Medicine, interview ("Risch interview"), Laura Ingraham Discusses How Medical Experts Are Increasing Vaccine Hesitancy (July 26, 2021), available at https://bit.ly/3zOL6Sx (last visited September 9, 2021).

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

68.     New variants of COVID-19 resulting from the virus's mutation do not escape the natural immunity developed by prior infection from the original strain of the virus, certainly not at any rate greater than for those whose immunity comes from vaccines.[2]

69.     Recent Israeli data found that those who had received the Pfizer Vaccine were 6.72 times more likely to suffer a subsequent infection than those with naturally acquired immunity. David Rosenberg, *Natural Infection vs Vaccination: Which Gives More Protection?* ISRAELNATIONALNEWS.COM (Jul. 13, 2021), available at https://www.israelnationalnews.com/News/News.aspx/309762 (last visited September 9, 2021).

70.     Israeli data also indicates that the protection Pfizer grants against infection is short-lived compared to natural immunity and degrades significantly faster. In fact, as of July 2021, vaccine recipients from January 2021 exhibited only 16% effectiveness against infection and 16% protection against symptomatic infection, increasing linearly until reaching a level of 75% for those vaccinated in April. *See* Nathan Jeffay, Israeli, UK data offer mixed signals on vaccine's potency against delta strain, THE TIMES OF ISRAEL (July 22, 2021), available at bit.ly/3xg3uCg (last visited September 9, 2021).

---

[2] Alison Tarke, A., Sidney, J., Methot, N., Zhang, Y., Dan, J. M., Goodwin, B., Rubiro, P., Sutherland, A., da Silva Antunes, R., Frazier, A., Rawlings, S. A., Smith, D. M., Peters, B., Scheuermann, R. H., Weiskopf, D., Crotty, S., Grifoni, A., & Sette, A., Negligible impact of SARS-CoV-2 variants on CD4 + and CD8 + T cell reactivity in COVID-19 exposed donors and vaccinees, BIORXIV, 2021.02.27.433180 (2021), https://doi.org/10.1101/2021.02.27.433180.
33 Wu, K., Werner, A. P., Moliva, J. I., Koch, M., Choi, A., Stewart-Jones, G. B. E., Bennett, H., Boyoglu-Barnum, S., Shi, W., Graham, B. S., Carfi, A., Corbett, K. S., Seder, R. A., & Edwards, D. K., mRNA-1273 vaccine induces neutralizing antibodies against spike mutants from global SARS-CoV-2 variants, BIORXIV : THE PREPRINT SERVER FOR BIOLOGY, 2021.01.25.427948 (2021), https://doi.org/10.1101/2021.01.25.427948.
34 Redd, A. D., Nardin, A., Kared, H., Bloch, E. M., Pekosz, A., Laeyendecker, O., Abel, B., Fehlings, M., Quinn, T. C., & Tobian, A. A., CD8+ T cell responses in COVID-19 convalescent individuals target conserved epitopes from multiple prominent SARS-CoV-2 circulating variants, MEDRXIV : THE PREPRINT SERVER FOR HEALTH SCIENCES, 2021.02.11.21251585 (2021), https://doi.org/10.1101/2021.02.11.21251585.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

71.     Those who received a second dose of the Pfizer Vaccine between January and April of this year were determined to have 39% protection against infection and 41% protection against symptomatic infection. This further suggests that the number of breakthrough infections was the result of waning vaccine protection as opposed to the spread of the Delta variant. *See* Carl Zimmer, *Israeli Data Suggests Possible Waning Infection in Effectiveness of Pfizer Vaccine*, THE NEW YORK TIMES (July 23, 2021); Kristen Monaco, Pfizer Vax Efficacy Dips at 6 Months, MEDPAGE TODAY (July 29, 2021), *available at* https://bit.ly/2VheBxw (last visited September 9, 2021).

72.     Early data also suggests that naturally acquired immunity may provide greater protection against both the Delta and Gamma variants than vaccine-induced immunity. A recent analysis of an outbreak among a small group of mine workers in French Guiana found that 60% of fully vaccinated miners suffered breakthrough infections compared to zero among those with natural immunity. Nicolas Vignier, *et al., Breakthrough Infections of SARS-CoV-2 Gamma Variant in Fully Vaccinated Gold Miners, French Guiana, 2021*, 27 EMERG. INFECT. DIS. (Oct. 2021), https://wwwnc.cdc.gov/eid/article/27/10/21-1427_article.

73.     The CDC reported that "new scientific data" indicated that vaccinated people who experienced breakthrough infections carried similar viral loads to the unvaccinated (but not naturally immune), leading the CDC to infer that vaccinated people transmit the virus at concerning levels. *See* CDC reversal on indoor masking prompts experts to ask, "*Where's the data?*", WASHINGTON POST (July 28, 2021), available at wapo.st/2THpmIQ (last visited September 9, 2021).

74.     There is no legitimate public health rationale for requiring proof of vaccination to participate in activities that do not involve care for high-risk individuals because there has already

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

been a successful vaccination campaign that already protects the vulnerable population. Thus, the unvaccinated — especially recovered COVID patients – pose a vanishingly small threat to the vaccinated. *See* Martin Kulldorff and Jay Bhattacharya, *Vaccine Passports Prolong Lockdowns*, WALL STREET JOURNAL (Apr. 6, 2021), https://www.wsj.com/articles/vaccine-passports-prolong-lockdowns-11617726629. Martin Kuldorff and Jay Bhattacharya, *The ill-advised push to vaccinate the young*, THEHILL.COM (June 17, 2021), https://thehill.com/opinion/healthcare/558757-the-ill-advised-push-to-vaccinate-the-young?rl=1.

**All Vaccines, including COVID-19 Vaccines, Can Cause Side Effects and Involve Risks.**

75.     It is a fundamental principle of immunology that "vaccinating a person who is recently or concurrently infected can reactivate, or exacerbate, a harmful inflammatory response to a virus." This applies to SARS-CoV-2 just as it does to viruses such as shingles. Homman Noorchashm, *The Recently Infected and Already Immune DO NOT Benefit from COVID-19 Vaccination*, MEDIUM.COM (Jun 1, 2021), https://noorchashm.medium.com/the-recently-infected-and-already-immune-do-not-benefit-from-covid-19-infection-7453886e8c89.

76.     Though the COVID-19 vaccines appear to be relatively safe at a population level, like all medical interventions, they carry a risk of side effects. Those include common, temporary reactions such as pain and swelling at the vaccination site, fatigue, headache, muscle pain, fever, and nausea. More rarely, they can cause serious side effects that result in hospitalization or death. *See* Centers for Disease Control, *Possible Side Effects After Getting a COVID-19 Vaccine* (June 24, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/expect/after.html.

77.     The vaccines could cause other side effects that remain unknown at this time given the stage of the vaccines' approval process.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

78. As a matter of simple logic, one cannot be certain about the long-term effects of a vaccine that has existed only for approximately a year, and thus cannot have been studied over a substantial period of time.

79. Medical necessity is a fundamental tenet of medical ethics. This principle requires that public health agents utilize "the least intrusive" means possible to achieve a given end, because every medical procedure carries some risk. James F. Childress, et al., *Public Health Ethics: Mapping the Terrain*, 30(2) J. LAW & MED. ETHICS 170 (2002).

80. Further, there may be greater risks of side effects for individuals who have had COVID-19 and then get the vaccination. Noam Barda, M.D., *et al, Safety of the BNT162b2 mRNA Covid-19 Vaccine in a Nationwide Setting*, New England Journal of Medicine, August 25, 2021, https://www.nejm.org/doi/full/10.1056/NEJMoa2110475 ("The risk of this potentially serious adverse event and of many other serious adverse events was substantially increased after SARS-CoV-2 infection.")

**Plaintiffs have Robust, Naturally Acquired Immunity to Covid-19.**

81. Plaintiffs have studied the available information, and have each been tested for antibodies. Based on their individual antibody tests, they each have determined that to undergo a full-course vaccination procedure would involve more risks than benefits. Such a course is unnecessary to protect any of the Plaintiffs or their communities from infection. Rather, a full-course vaccination procedure would expose Plaintiffs to a heightened risk of adverse side effects that would exceed any speculative benefit the vaccine could confer on someone already protected with antibodies. *See* N. Kojima, et al., *Incidence of Severe Acute Respiratory Syndrome Coronavirus-2 infection among previously infected or vaccinated employees*, https://www.medrxiv.org/content/10.1101/2021.07.03.21259976v2 (July 8, 2021).

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

82.     Existing clinical reports and studies indicate that individuals with a prior infection and naturally acquired immunity face an elevated risk of adverse effects from the vaccine, compared to those who have never contracted COVID-19. Alexander G. Mathioudakis, et al., *Self-Reported Real-World Safety and Reactogenicity of COVID-19 Vaccines: A Vaccine Recipient Survey*, 11 LIFE 249 (Mar. 2021). Cristina Menni, *Vaccine side-effects and SARS-CoV-2 infection after vaccination in users of the COVID symptom study app in the UK: a prospective observational study*, 21 LANCET INFECTIOUS DISEASES 939-49 (July 2021); *See Multisystem Inflammatory Syndrome after SARS-CoV-2 Infection and COVID-19 Vaccination*, 27 (Number 7) EMERGING INFECTIOUS DISEASE (July 2021) (Centers for Disease Control and Prevention Dispatch); *see also* Hooman Noorchashm, *CDC Knows Vaccine Associated Critical Illness and Myocarditis are Linked to Prior COVID-19 Infections*, MEDIUM.COM (Jun 2, 2021), https://noorchashm.medium.com/cdc-knows-vaccine-associated-critical-illness-and-myocarditis-are-linked-to-prior-covid-19-62942c39c5ca.

83.     This is consistent with understandings of immunology generally, which recognize that "vaccinating a person who is recently or concurrently infected [with any virus] can reactivate, or exacerbate, a harmful inflammatory response to the virus." Homman Noorchashm, *The Recently Infected and Already Immune DO NOT Benefit from COVID-19 Vaccination*, MEDIUM.COM (Jun 1, 2021), https://noorchashm.medium.com/the-recently-infected-and-already-immune-do-not-benefit-from-covid-19-infection-7453886e8c89.

84.     Given these potential side effects, and the fact that plaintiffs possess naturally acquired immunity that makes the vaccine medically unnecessary, compelling Plaintiffs to receive a full vaccine course would pose a risk of undue harm and thereby violate a fundamental tenet of medical ethics.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

85.     Plaintiffs have real, substantial, and legitimate concerns about taking the vaccines in light of their naturally acquired immunity and the potential for short- and long- term side effects from the vaccines themselves.

86.     The immunological evidence to date suggests that natural immunity against disease will last for years, and uncertainty over the longevity of immunity after recovery is a specious reason for not exempting COVID-19 recovered patients from vaccination mandates, since the same can be said about vaccine mediated immunity. Patel N (2021) *Covid-19 Immunity Likely Lasts for Years. MIT Technology Review.* January 6, 2021. https://www.technologyreview.com/2021/01/06/1015822/covid-19-immunity-likely-lasts-for-years/.

87.     For example, the United States requires everyone, including its citizens, to provide proof of a negative COVID-19 test before returning to the country from abroad. Documentation of recovery suffices as a substitute, although proof of vaccination does not. See Requirement of Proof of Negative COVID-19 Test or Recovery from COVID-19 for All Air Passengers Arriving in the United States, CDC (July 6, 2021), available at https://www.cdc.gov/coronavirus/2019-ncov/travelers/testing-international-air-travelers.html (last visited September 9, 2021).

88.     Oregon has no compelling interest in preventing these Plaintiffs from spreading COVID-19, as compared to its interest in vaccinating those without antibodies to prevent them from spreading COVID-19.

**Plaintiffs have Experienced, and Will Continue to Experience, Concrete and Particularized Harm, As a Result of the Vaccine Mandates.**

89.     Plaintiffs expect that they will lose their jobs if they do not obtain the COVID-19 vaccination since both vaccination mandates threaten employers with a $500/incident fine for noncompliance.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

90.     Given that naturally acquired immunity confers equal or greater protection than that provided by the vaccines, the vaccine mandates are arbitrary and irrational as applied to those who possess natural immunity. There is no indication that either mandate is tailored to account for its impact on those who have acquired natural immunity.

91.     Nor is mandatory vaccination for those with naturally acquired immunity reasonably tailored to any asserted legitimate government interest.

92.     Plaintiffs require relief on a tight timeline because the Oregon Health Authority did not issue its current rule regarding mandatory vaccinations for healthcare providers and school personnel until August 25, 2021, and the deadline for full vaccination is October 18, 2021.

**CLAIMS FOR RELIEF**

**COUNT I: VIOLATION OF THE NINTH AND FOURTEENTH AMENDMENT RIGHT TO REFUSE UNWANTED MEDICAL TREATMENT.**

93.     Plaintiff re-alleges and incorporates by reference the information contained in the paragraphs set forth above.

94.     Oregon's vaccine mandates require Plaintiffs to take a vaccine without their consent—and against medical advice— as a condition of employment, thereby depriving Plaintiffs of their ability to refuse unwanted medical care.

95.     The Supreme Court has recognized that the Ninth and Fourteenth Amendments protect an individual's right to privacy. A "forcible injection … into a nonconsenting person's body represents a substantial interference with that person's liberty[.]" *Washington v. Harper*, 494 U.S. 210, 229 (1990).

96.     The common law baseline is also a relevant touchstone out of which grew the relevant constitutional law. *See, e.g., Cruzan v. Dir., Mo. Dep't of Public Health*, 497 U.S. 261,

PAGE 18 – FIRST AMENDED VERIFIED COMPLAINT

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

278 (1990) ("'At common law, even the touching of one person by another without consent and without legal justification was a battery'). *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, *PROSSER AND KEETON ON LAW OF TORTS* § 9, pp. 39-42 (5th ed. 1984).); *Schloendorff v. Society of N.Y. Hosp.*, 211 N.Y. 125, 129-130, 105 N.E. 92, 93 (1914) (Cardozo, J.) ('Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages.').

97.     Subsequent Supreme Court decisions have made explicit that the Constitution protects a person's right to "refus[e] unwanted medical care." *Cruzan*, 497 U.S. at 278; *King v. Rubenstein*, 825 F.3d 206, 222 (4th Cir. 2016) (recognizing same).

98.     This right is "so rooted in our history, tradition, and practice as to require special protection under the Fourteenth Amendment." *Washington v. Glucksberg*, 521 U.S. 702, 722 n.17 (1997).

99.     The Supreme Court has explained that the right to refuse medical care derives from the "well established, traditional rights to bodily integrity and freedom from unwanted touching." *Vacco v. Quill*, 521 U.S. 793, 807 (1997).

100.     Coercing employees to receive a vaccine for a virus that presents a near-zero risk of illness or death to them and which they are exceedingly unlikely to pass on to others, because those employees already possess natural immunity to the virus, violates Plaintiffs' liberty and privacy interests that the Ninth and Fourteenth Amendments protect.

101.     When a state policy implicates a fundamental right, through coercion or otherwise, the strict scrutiny standard applies, and law will not be upheld unless the government demonstrates

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

that the law is necessary to further a compelling governmental interest and has been narrowly tailored to achieve that interest.

102.    Defendants cannot show that they have a compelling interest in coercing Plaintiffs into receiving a COVID-19 vaccine, because Oregon has no compelling interest in treating employees with natural immunity any differently from employees who obtained immunity from a vaccine. In particular, Oregon has no compelling interest in protecting these Plaintiffs from COVID-19.

103.    As above, substantial research establishes that a COVID-19 infection creates immunity to the virus at least as robust, durable, and long-lasting as that achieved through vaccination.

104.    There is no question that Plaintiffs have natural immunity, given their recent antibody screening tests which demonstrate ongoing and robust immune protection.

105.    In addition to Oregon's lack of interest in requiring that already immune employees get vaccinated, Defendants cannot show that the rule is narrowly tailored to any compelling governmental interest. Any interest Oregon may have in promoting immunity for healthcare workers and school employees does not extend to those employees who already have natural immunity—particularly those who can demonstrate such immunity through antibody screenings.

106.    By failing to tailor its vaccine mandates to only those employees who lack immunity, Oregon's rule forces employees such as Plaintiffs, who have robust natural immunity, to choose between their health, their personal autonomy, and their careers.

107.    Plaintiffs have suffered and will continue to suffer damage from Defendants' conduct. Plaintiffs will lose their jobs because of the vaccine mandates unless they submit to the invasion of their bodies through a vaccination which carries inherent risks of serious side effects

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

(when compared to those receiving a vaccination who have not previously contracted Covid-19) without a commensurate benefit. Any commensurate benefit is erased because of Plaintiffs already possess immunity.

108. There is no adequate remedy at law, as there are no damages that could compensate Plaintiffs for the deprivation of their constitutional rights. They will suffer irreparable harm unless this Court enjoins Defendants from enforcing their vaccine mandate.

109. Plaintiffs are entitled to a judgment declaring that the vaccine mandates violate their constitutional right to refuse medical treatment, and Plaintiffs are entitled to an injunction restraining Defendants' enforcement of the vaccination mandates against those who have naturally acquired immunity by recovering from COVID-19.

## COUNT II: VIOLATION OF THE
## FOURTEENTH AMENDMENT'S RIGHT TO DUE PROCESS

110. Plaintiff re-alleges and incorporates by reference the facts contained in the paragraphs set forth above.

111. The Due Process Clause of the Fourteenth Amendment provides: "nor shall any state deprive any person of life, liberty, or property, without due process of law …." U.S. Const., amend. XIV, sec. 1.

112. Plaintiffs possess both a liberty interest in their bodily integrity and a property interest in their chosen careers.

113. Oregon's vaccine mandates amount to coercion because they impose punitive fines on employers who are found to be out of compliance, and therefore each of Plaintiffs' employers has been forced to direct Plaintiffs to obtain the vaccination.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

114.    Further, Oregon's vaccination mandates burden a constitutional right by imposing undue pressure on an otherwise voluntary choice with a nexus to the exercise of a constitutional right.

115.    Each of the Plaintiffs holds a protected liberty interest in freedom from unconsented-to bodily intrusions and medical interventions. Oregon has not and cannot show that forcing Plaintiffs to take the vaccine reduces any risk that they will become infected with and spread the virus others. *See also Lawrence v. Texas*, 539 U.S. 558, 562 (2003) (The Due Process Clause protects "liberty of the person both in its spatial and in its more transcendent dimensions").

116.    The process Oregon has established in relation to taking COVID-19 vaccines poses dangers to Plaintiffs' health (and thus to their liberty interests) as well as threatening them with various forms of penalties and other detriments, including loss of employment.

117.    The State of Oregon similarly possesses no compelling interest that could justify its vaccine mandates as applied to Plaintiffs who have had COVID-19 that will inevitably result in at unwarranted medical intrusions into Plaintiffs' bodies or loss of their employment.

118.    Oregon's vaccination mandates offer no justifications for why the penalties and other restrictions it establishes are appropriate and tailored to members of the community that have acquired robust natural immunity. Whatever Oregon is trying to decree, Plaintiffs remain community members with natural immunity, and the existence of such immunity fully serves the supposed purposes of the public-health protection that Oregon says that it is pursuing. *See* Exhibits A, B and C.

119.    The proportionality of the vaccination mandates is also deficient because the mandates do not seek to assess the current antibody levels of their targets, something that is now feasible for medical science to test.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

120.    The mandates are not mere presumptions that vaccination is superior to natural immunity (a contention that would have to be borne out by the science in any event or else Oregon had no business adopting its mandates) that Plaintiffs can try to overcome. No, the mandates are, in essence, a conclusive presumption that vaccination are required. But what if Plaintiffs and others with natural immunity possess higher levels of antibodies than at least many of those who took one or more of the various inferior vaccines? And why has Oregon deemed all vaccines to be equally protective in the fictitious presumption it has established?

121.    Finally, is there any scientific basis for the presumptions Oregon has built into its mandates? The mandates answer none of these questions. They do not even try.

122.    For these reasons, the de facto presumptions the vaccine mandates establish also become another part of Oregon's procedural due process violations. In short, allocating burden of proof responsibility to those with natural immunity like Plaintiffs, coupled with Oregon's stacking the process with presumptions Plaintiffs will show are scientifically unwarranted, contravene the Due Process Clause. *See Perry v. Sinderman*, 408 U.S. 592, 597 (1972) (holding that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests"); *Wieman v. Updegraff*, 344 U.S. 183, 192 (1952) ("We need not pause to consider whether an abstract right to public employment exists. It is sufficient to say that constitutional protection does extend to the public servant whose exclusion pursuant to a statute is patently arbitrary or discriminatory").

### COUNT III: VIOLATION OF THE
### FOURTEENTH AMENDMENT'S RIGHT TO EQUAL PROTECTION.

123.    The vaccine mandates create government classifications that burden the fundamental right to privacy and bodily autonomy. As such, the vaccine mandates are subject to strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Additionally,

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

government classifications must have at least a rational basis in furtherance of a legitimate interest. *See Romer v. Evans*, 517 U.S. 620, 633 (1996) ("A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [protection] from the government is itself a denial of equal protection of the laws in the most literal sense.")

124.    The vaccine mandates flagrantly burden Plaintiffs' rights to bodily integrity and privacy and easily fail strict scrutiny, thereby violating the Equal Protection Clause.

125.    The State of Oregon possesses no compelling interest that could justify its vaccination mandates with their inevitable unwarranted medical intrusions into the bodies of citizens. At bottom, the existence of natural immunity fully serves the supposed purposes of the public-health protection that Oregon says that it is pursuing.

## ADDITIONAL LEGAL CLAIMS

126.    Plaintiffs have suffered and will continue to suffer damage from Defendants' conduct. There is no adequate remedy at law, as there are no damages that could compensate Plaintiffs for the deprivation of their constitutional rights. They will suffer irreparable harm unless this Court enjoins Defendants from enforcing the vaccine mandates.

127.    There is no compelling government interest that that justifies the mandate, that could not be served through a less-invasive policy. For example, the State could allow those with natural immunity the option to demonstrate their antibody levels as an alternative to receiving a vaccination.

128.    Further, the State has not even demonstrated a rational basis for requiring vaccinations of employees who have natural immunity which is more protective than the vaccinations themselves.

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

129.     42 U.S.C. § 1983 provides a civil right of action for deprivations of constitutional protections taken under color of law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court find the Defendants have committed the violations alleged and described above, and issue in response the following

A.     A statewide temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the vaccine mandates such that:

(1) The vaccine mandates are suspended in operation to the extent that the Oregon Health Authority is barred from enforcing any requirement that employers require employees who have proof of COVID-19 antibodies to get vaccinated;

(2) The Oregon Health Authority is barred from assessing any fine or fee against an employer that makes an exemption from the vaccination mandate for employees who have proof of COVID-19 immunity;

B.     A declaratory judgment that Oregon Health Authority's vaccine mandates infringe upon Plaintiffs' constitutionally protected rights to protect their bodily integrity and to refuse unnecessary medical treatment.

C.     A declaratory judgment that Oregon Health Authority's vaccine mandate represents an unconstitutional condition, especially in light of a set of explicit and implicit procedures established in the mandate that violates the Due Process Clause of the Fourteenth

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

Amendment.

D.     An injunction against the Governor of the State of Oregon and any of her agents or employees, including but not limited to the Oregon Health Authority, from enforcing Oregon's vaccination mandates as applied to anyone who has recovered from COVID-19 and has natural immunity confirmed by an antibody test.

E.     An award of reasonable costs and expenses of this action, including reasonable attorney's fees, in accordance with 42 U.S.C. § 1988; and

F.     Such other and further relief as the Court deems equitable and just under the circumstances.

Date: September 28, 2021

By:     */s/Rebekah Millard*
        Rebekah Millard, OSB #121199
        rmillard@freedomfoundation.com
        Attorney for Plaintiff

FREEDOM FOUNDATION

P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

## VERIFICATION

I, Joshua L. Williams, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on September 27, 2021

Joshua J. Williams

## VERIFICATION

I, Jennifer Lewis, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on September 27, 2021.

## VERIFICATION

I, _Phillip D. Kearney_, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _September 25_, 2021.

## VERIFICATION

I, *Michael Miller*, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on *September 25*, 2021.

## VERIFICATION

I, _Jay Hicks_, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _Sept. 24_, 2021.

_Jay Hicks_

## VERIFICATION

I, _Janna J. Gochran_, am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _September 24_, 2021.

_Janna J. Cochran_

## VERIFICATION

I, _Julie Ann Siderman_ am over the age of 18 and am a Plaintiff in this action. The allegations that pertain to me in this VERIFIED COMPLAINT are true and correct, based upon my personal knowledge (unless otherwise indicated), and if called upon to testify as to their truthfulness, I would and could do so competently. I declare under penalties of perjury, under the laws of the United States, that the foregoing statements are true and correct.

Executed on _September 25_, 2021.

_Julie Ann Siderman_

# Exhibit A



ARCHIVES DIVISION

STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

# TEMPORARY ADMINISTRATIVE ORDER
INCLUDING STATEMENT OF NEED & JUSTIFICATION

## PH 38-2021
CHAPTER 333
OREGON HEALTH AUTHORITY
PUBLIC HEALTH DIVISION

> **FILED**
> 08/25/2021 9:34 AM
> ARCHIVES DIVISION
> SECRETARY OF STATE
> & LEGISLATIVE COUNSEL

FILING CAPTION: Vaccination Requirements to Control COVID-19 for Healthcare Providers and Healthcare Staff

EFFECTIVE DATE: 08/25/2021 THROUGH 01/31/2022

AGENCY APPROVED DATE: 08/25/2021

CONTACT: COVID Response and
Recovery Unit
503-945-5488
COVID.19@dhsoha.state.or.us

800 NE Oregon St.
Portland,OR 97232

Filed By:
Brittany Hall
Rules Coordinator

## NEED FOR THE RULE(S):

It is vital to this state that health care providers and health care staff be vaccinated against COVID-19 in order to protect themselves, their patients and statewide hospital capacity. COVID-19 infection is caused by a virus, severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). This virus undergoes frequent mutations as it replicates, which over time has resulted in variants that are more transmissible, cause more severe disease or have other features of public health concern such as decreased vaccine effectiveness. In August of 2021, the B.1.617.2 (Delta) variant accounted for more than 98% of the COVID-19 infections in Oregon.

The Delta variant is approximately 2-3-fold more transmissible than early wild-type COVID-19 variants. People infected with the Delta variant have higher viral loads and a shorter incubation period. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. Health care providers have contact with multiple patients over the course of a typical day, including providers who provide care for people in their homes. Individuals cared for by health care providers are more likely than the general public to have conditions that put them at risk for complications of COVID-19. The Delta variant is causing a surge in unvaccinated cases and vaccine breakthrough cases. This rule is necessary to help control COVID-19, protect patients, and to protect the state's healthcare workforce.

This filing replaces Temporary Administrative Order PH 34-2021 filed and effective on August 5, 2021.

## JUSTIFICATION OF TEMPORARY FILING:

The Authority finds that failure to act promptly will result in serious prejudice to the public interest, the Authority, and healthcare personnel and patients seeking and relying on health care. This rule needs to be adopted promptly so that the state can continue to prevent and slow the spread of COVID-19, for the reasons specified above. Requiring

vaccination for healthcare personnel in healthcare settings is crucial to the effort in controlling COVID-19.

DOCUMENTS RELIED UPON, AND WHERE THEY ARE AVAILABLE:

Oregon Health Care Workforce COVID-19 Vaccine Uptake
(https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonHealthCareWorkforceCOVID-19VaccineUptake/Dash-Overview)

Long-Term Care Facilities COVID-19 Vaccination Data (July 26, 2021)
(https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/LTCFCOVID-19VaccinationData/WeeklyTrend)

OHA COVID-19 Breakthrough Report (August 19, 2021)
(https://www.oregon.gov/oha/covid19/Documents/DataReports/Breakthrough-Case-Report.pdf)

OHA Dashboard: Hospital Capacity and Usage in Oregon (reported by HOSCAP), August 20, 2021. Available at
https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19Update/HospitalCapacity.

OHA Dashboard: Oregon's Hospitalization Trend by Severity (August 20, 2021). Available at
https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19HospitalCapacity/HospitalizationbySeverity.

OHA Dashboard: Oregon's COVID-19 Disease Spread (August 22, 2021). Available at
https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19PublicHealthIndicators/DiseaseSpread.

Cavanaugh AM, Spicer KB, Thoroughman D, Glick C, Winter K. Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021. MMWR Morb Mortal Wkly Rep 2021;70:1081-1083. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e1

Christie A, Brooks JT, Hicks LA, et al. Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage. MMWR Morb Mortal Wkly Rep 2021;70:1044–1047. DOI: http://dx.doi.org/10.15585/mmwr.mm7030e2

COVID, C., Team, V.B.C.I., COVID, C., Team, V.B.C.I., COVID, C., Team, V.B.C.I., Birhane, M., Bressler, S., Chang, G., Clark, T. and Dorough, L., 2021. COVID-19 Vaccine Breakthrough Infections Reported to CDC—United States, January 1–April 30, 2021. Morbidity and Mortality Weekly Report, 70(21), p.792. available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7021e3.htm

Herlihy R, Bamberg W, Burakoff A, et al. Rapid Increase in Circulation of the SARS-CoV-2 B.1.617.2 (Delta) Variant — Mesa County, Colorado, April–June 2021. MMWR Morb Mortal Wkly Rep 2021;70:1084-1087. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e2

Lee JT, Althomsons SP, Wu H, et al. Disparities in COVID-19 Vaccination Coverage Among Health Care Personnel Working in Long-Term Care Facilities, by Job Category, National Healthcare Safety Network — United States, March 2021. MMWR Morb Mortal Wkly Rep 2021;70:1036–1039. DOI: http://dx.doi.org/10.15585/mmwr.mm7030a2

Li, B., Deng, A., Li, K., Hu, Y., Li, Z., Xiong, Q., Liu, Z., Guo, Q., Zou, L., Zhang, H. and Zhang, M., 2021. Viral infection and Transmission in a large well-traced outbreak caused by the Delta SARS-CoV-2 variant available at https://www.medrxiv.org/content/10.1101/2021.07.07.21260122v1.

Moline HL, Whitaker M, Deng L, et al. Effectiveness of COVID-19 Vaccines in Preventing Hospitalization Among Adults Aged 65 Years — COVID-NET, 13 States, February–April 2021. MMWR Morb Mortal Wkly Rep 2021;70:1088-1093. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e3

Nanduri S, Pilishvili T, Derado G, et al. Effectiveness of Pfizer-BioNTech and Moderna Vaccines in Preventing SARS-CoV-2 Infection Among Nursing Home Residents Before and During Widespread Circulation of the SARS-CoV-2 B.1.617.2 (Delta) Variant — National Healthcare Safety Network, March 1–August 1, 2021. MMWR Morb Mortal Wkly Rep. ePub: 18 August 2021. DOI: http://dx.doi.org/10.15585/mmwr.mm7034e3

Rosenberg ES, Holtgrave DR, Dorabawila V, et al. New COVID-19 Cases and Hospitalizations Among Adults, by Vaccination Status — New York, May 3–July 25, 2021. MMWR Morb Mortal Wkly Rep. ePub: 18 August 2021. DOI: http://dx.doi.org/10.15585/mmwr.mm7034e1

---

ADOPT: 333-019-1010

SUSPEND: Temporary 333-019-1010 from PH 34-2021

RULE TITLE: COVID-19 Vaccination Requirement for Healthcare Providers and Healthcare Staff in Healthcare Settings

RULE SUMMARY: OAR 333-019-1010 helps to prevent and slow the spread of COVID-19 by requiring health care personnel and healthcare staff who work in healthcare settings to be vaccinated against COVID-19 or request a medical or religious exception.


Healthcare personnel includes individuals, paid and unpaid working, learning, studying, assisting, observing or volunteering in a healthcare setting providing direct patient or resident care or who have the potential for direct or indirect exposure to patients, residents, or infectious materials, and includes but is not limited to any individual licensed by a health regulatory board as that is defined in ORS 676.160, unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and

volunteer personnel.

Healthcare setting includes any place where health care, including physical or behavioral health care is delivered and includes, but is not limited to any health care facility or agency licensed under ORS chapter 441 or 443, such as hospitals, ambulatory surgical centers, birthing centers, special inpatient care facilities, long-term acute care facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, ambulances), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

However, healthcare setting does not include:
• Any setting described in paragraph (2)(e)(A) of the rule where the responsible party is a part of state government as that is defined in ORS 174.111.
• An individual's private home if that individual contracts directly with the healthcare provider or health care staff person, and the home is not otherwise licensed, registered or certified as a facility or home listed in paragraph (2)(e)(A) of the rule.

Medical exception means that an individual has a physical or mental impairment that prevents the individual from receiving a COVID-19 vaccination.

Religious exception means that an individual has a sincerely held religious belief that prevents the individual from receiving a COVID-19 vaccination.

After October 18, 2021:
• A health care provider or healthcare staff person may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation of a medical or religious exception.
• An employer of healthcare providers or healthcare staff, a contractor, or a responsible party may not employ, contract with, or accept the volunteer services of healthcare providers or healthcare staff persons who are working, learning, studying, assisting, observing or volunteering at a healthcare setting unless the healthcare providers or healthcare staff persons are fully vaccinated against COVID-19 or have a documented medical or religious exception.

On or before October 18, 2021, healthcare providers and healthcare staff must provide their employer, contractor or responsible party with either:
• Proof of vaccination showing they are fully vaccinated; or
• Documentation of a medical or religious exception.

A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, certifying that the individual has a physical or mental impairment that limits the individual's

ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual.

Employers of healthcare providers or healthcare staff, contractors and responsible parties who grant an exception to the vaccination requirement should take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19.

On or before October 18, 2021, all employers of healthcare providers or healthcare staff, contractors, and responsible parties must have documentation that all healthcare providers and healthcare staff are in compliance with the rule.

The rule permits employers of healthcare providers or healthcare staff, contractors and responsible parties to:
• Have more restrictive or additional requirements, including but not limited to requiring healthcare providers and healthcare staff to have documentation of an additional or booster dose of a COVID-19 vaccine if that is recommended by the U.S. Centers for Disease Control and Prevention.
• Impose the vaccination requirements at an earlier date.

The vaccination documentation and documentation of medical and religious exceptions described in the rule must be:
• Maintained in accordance with applicable federal and state laws;
• Maintained for at least two years; and
• Provided to the Oregon Health Authority upon request.

Employers of healthcare providers or healthcare staff, contractors and responsible parties who violate any provision of this rule are subject to civil penalties of $500 per day per violation.

RULE TEXT:
(1) It is vital to this state that healthcare providers and healthcare staff be vaccinated against COVID-19. COVID-19 undergoes frequent mutations as it replicates, which over time has resulted in variants that are more transmissible or cause more severe disease. As of the time this rule was adopted, Delta was the variant making up more than 98 percent of sequenced specimens in Oregon. The Delta variant is approximately two to three times more infectious than early wild-type COVID-19 variants. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. Healthcare providers and healthcare staff have contact with multiple patients over the course of a typical day and week, including providers that provide care for people in their homes. Individuals cared for in these settings are more likely than the general public to have conditions that put them at risk for complications due to COVID-19. COVID-19 variants are running through the state's

unvaccinated population and causing an increase in breakthrough cases for those who are fully vaccinated. This rule is necessary to help control COVID-19, protect patients, and to protect the state's healthcare workforce.

(2) For purposes of this rule, the following definitions apply:

(a) "Contractor" means a person who has healthcare providers or healthcare staff on contract to provide services in healthcare settings in Oregon.

(b) "COVID-19" means a disease caused by the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2).

(c) "Fully vaccinated" means having received both doses of a two-dose COVID-19 vaccine or one dose of a single-dose COVID-19 vaccine and at least 14 days have passed since the individual's final dose of COVID-19 vaccine.

(d) "Healthcare providers and healthcare staff":

(A) Means individuals, paid and unpaid, working, learning, studying, assisting, observing or volunteering in a healthcare setting providing direct patient or resident care or who have the potential for direct or indirect exposure to patients, residents, or infectious materials, and includes but is not limited to any individual licensed by a health regulatory board as that is defined in ORS 676.160, unlicensed caregivers, and any clerical, dietary, environmental services, laundry, security, engineering and facilities management, administrative, billing, student and volunteer personnel.

(B) Does not mean parents, family members, guardians or foster parents residing in the home and providing care to a child or foster child in the home.

(e) "Healthcare setting":

(A) Means any place where health care, including physical or behavioral health care is delivered and includes, but is not limited to any health care facility or agency licensed under ORS chapter 441 or 443, such as hospitals, ambulatory surgical centers, birthing centers, special inpatient care facilities, long-term acute care facilities, inpatient rehabilitation facilities, inpatient hospice facilities, nursing facilities, assisted living facilities, residential facilities, residential behavioral health facilities, adult foster homes, group homes, pharmacies, hospice, vehicles or temporary sites where health care is delivered (for example, mobile clinics, ambulances), and outpatient facilities, such as dialysis centers, health care provider offices, behavioral health care offices, urgent care centers, counseling offices, offices that provide complementary and alternative medicine such as acupuncture, homeopathy, naturopathy, chiropractic and osteopathic medicine, and other specialty centers.

(B) Does not include any setting described in paragraph (A) of this subsection where the responsible party is a part of state government as that is defined in ORS 174.111.

(C) Does not include a person's private home if the home is not otherwise licensed, registered or certified as a facility or home listed in paragraph (A) of this subsection.

(f) "Medical exception" means that an individual has a physical or mental impairment that prevents the individual from receiving a COVID-19 vaccination.

(g) "Religious exception" means that an individual has a sincerely held religious belief that prevents the individual from receiving a COVID-19 vaccination.

(h) "Proof of vaccination" means documentation provided by a tribal, federal, state or local government, or a health care provider, that includes an individual's name, date of birth, type of COVID-19 vaccination given, date or dates given, depending on whether it is a one-dose or two-dose vaccine, and the name/location of the health care provider or site where the vaccine was administered. Documentation may include but is not limited to a COVID-19 vaccination record card or a copy or digital picture of the vaccination record card, or a print-out from the Oregon Health Authority's immunization registry.

(i) "Responsible party" means a person or persons who have control or responsibility for the activities of healthcare providers or healthcare staff in a healthcare setting.

(3) After October 18, 2021:

(a) A health care provider or healthcare staff person may not work, learn, study, assist, observe, or volunteer in a healthcare setting unless they are fully vaccinated or have provided documentation of a medical or religious exception.

(b) An employer of healthcare providers or healthcare staff, a contractor, or a responsible party may not employ, contract with, or accept the volunteer services of healthcare providers or healthcare staff persons who are working,

learning, studying, assisting, observing or volunteering at a healthcare setting unless the healthcare providers or healthcare staff persons are fully vaccinated against COVID-19 or have a documented medical or religious exception.

(4) On or before October 18, 2021, healthcare providers and healthcare staff must provide their employer, contractor or responsible party with either:

(a) Proof of vaccination showing they are fully vaccinated; or

(b) Documentation of a medical or religious exception.

(A) A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, on a form prescribed by the Oregon Health Authority, certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

(B) A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual.

(5) Employers of healthcare providers or healthcare staff, contractors and responsible parties who grant an exception to the vaccination requirement under section (4) of this rule must take reasonable steps to ensure that unvaccinated healthcare providers and healthcare staff are protected from contracting and spreading COVID-19.

(6) On or before October 18, 2021, all employers of healthcare providers or healthcare staff, contractors, and responsible parties must have documentation that all healthcare providers and healthcare staff are in compliance with section (4) of this rule.

(7) Nothing in this rule is intended to prohibit employers of healthcare providers or healthcare staff, contractors and responsible parties from:

(a) Complying with the Americans with Disabilities Act and Title VII of the Civil Rights Act, and state law equivalents, for individuals unable to be vaccinated due to a medical condition or a sincerely held religious belief.

(b) Having more restrictive or additional requirements, including but not limited to requiring healthcare providers and healthcare staff to have documentation of an additional or booster dose of a COVID-19 vaccine if that is recommended by the U.S. Centers for Disease Control and Prevention.

(c) Imposing these requirements at an earlier date.

(8) The vaccination documentation and documentation of medical and religious exceptions described in section (4) of this rule must be:

(a) Maintained in accordance with applicable federal and state laws;

(b) Maintained for at least two years; and

(c) Provided to the Oregon Health Authority upon request.

(9) Employers of healthcare providers or healthcare staff, contractors and responsible parties who violate any provision of this rule are subject to civil penalties of $500 per day per violation.

STATUTORY/OTHER AUTHORITY: ORS 413.042, ORS 431A.010, ORS 431.110, ORS 433.004

STATUTES/OTHER IMPLEMENTED: ORS 431A.010, ORS 431.110, ORS 433.004

Exhibit B



ARCHIVES DIVISION
STEPHANIE CLARK
DIRECTOR

800 SUMMER STREET NE
SALEM, OR 97310
503-373-0701

# TEMPORARY ADMINISTRATIVE ORDER
INCLUDING STATEMENT OF NEED & JUSTIFICATION

## PH 39-2021
CHAPTER 333
OREGON HEALTH AUTHORITY
PUBLIC HEALTH DIVISION

| FILED |
|---|
| 08/25/2021 10:11 AM<br>ARCHIVES DIVISION<br>SECRETARY OF STATE<br>& LEGISLATIVE COUNSEL |

FILING CAPTION: Vaccination Requirements to Control COVID-19 for Schools and School-based Programs

EFFECTIVE DATE: 08/25/2021 THROUGH 02/20/2022

AGENCY APPROVED DATE: 08/25/2021

CONTACT: COVID Response and
Recovery Unit
503-945-5488
COVID.19@dhsoha.state.or.us

800 NE Oregon St.
Portland,OR 97232

Filed By:
Brittany Hall
Rules Coordinator

NEED FOR THE RULE(S):

It is vital to this state that teachers, school staff, volunteers, and school-based program staff and volunteers be vaccinated against COVID-19 in order to protect themselves, children and students, particularly those who are too young to get vaccinated, against COVID-19, hospitalization and death. COVID-19 infection is caused by a virus, severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2). This virus undergoes frequent mutations as it replicates, which over time has resulted in variants that are more transmissible, cause more severe disease or have other features of public health concern such as decreased vaccine effectiveness. In August of 2021, the B.1.617.2 (Delta) variant accounted for more than 98% of the COVID-19 infections in Oregon.

The Delta variant is approximately 2-3-fold more transmissible than early wild-type COVID-19 variants. People infected with the Delta variant have higher viral loads and a shorter incubation period. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. The Delta variant is causing a surge in unvaccinated cases and vaccine breakthrough cases and Oregon's health care system is overwhelmed as a result. This rule is necessary to help control COVID-19, and to protect children, teachers, school staff, volunteers, and school-based program staff and volunteers.

JUSTIFICATION OF TEMPORARY FILING:

The Authority finds that failure to act promptly will result in serious prejudice to the public interest, the Authority, and those working, attending and volunteering in schools and school-based programs. COVID-19 case numbers are higher than they have ever been, hospitalization of COVID-19 patients is on a steep rise, and Oregon's health care system is overwhelmed and at or over capacity. This rule needs to be adopted promptly so that the state can continue to prevent and slow the spread of COVID-19, for the reasons specified above. Requiring vaccination for those working and volunteering in schools and school-based programs is crucial to the effort in controlling COVID-19, and to ensure that students can stay in school and receive in-person instruction.

DOCUMENTS RELIED UPON, AND WHERE THEY ARE AVAILABLE:

OHA Dashboard: Pediatric COVID-19 Cases (August 18, 2021). Available at https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19PediatricReport/Demographics.

OHA Dashboard: Hospital Capacity and Usage in Oregon (reported by HOSCAP), August 20, 2021. Available at https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19Update/HospitalCapacity.

OHA Dashboard: Oregon's Hospitalization Trend by Severity (August 20, 2021). Available at https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19HospitalCapacity/HospitalizationbySeverity.

OHA Dashboard: Oregon's COVID-19 Disease Spread (August 22, 2021). Available at https://public.tableau.com/app/profile/oregon.health.authority.covid.19/viz/OregonCOVID-19PublicHealthIndicators/DiseaseSpread.

Cavanaugh AM, Spicer KB, Thoroughman D, Glick C, Winter K. Reduced Risk of Reinfection with SARS-CoV-2 After COVID-19 Vaccination — Kentucky, May–June 2021. MMWR Morb Mortal Wkly Rep 2021;70:1081-1083. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e1

Christie A, Brooks JT, Hicks LA, et al. Guidance for Implementing COVID-19 Prevention Strategies in the Context of Varying Community Transmission Levels and Vaccination Coverage. MMWR Morb Mortal Wkly Rep 2021;70:1044–1047. DOI: http://dx.doi.org/10.15585/mmwr.mm7030e2

Herlihy R, Bamberg W, Burakoff A, et al. Rapid Increase in Circulation of the SARS-CoV-2 B.1.617.2 (Delta) Variant — Mesa County, Colorado, April–June 2021. MMWR Morb Mortal Wkly Rep 2021;70:1084-1087. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e2

Hershow RB, Wu K, Lewis NM, et al. Low SARS-CoV-2 Transmission in Elementary Schools — Salt Lake County, Utah, December 3, 2020–January 31, 2021. MMWR Morb Mortal Wkly Rep 2021;70:442–448. DOI: http://dx.doi.org/10.15585/mmwr.mm7012e3

Li, B., Deng, A., Li, K., Hu, Y., Li, Z., Xiong, Q., Liu, Z., Guo, Q., Zou, L., Zhang, H. and Zhang, M., 2021. Viral infection and Transmission in a large well-traced outbreak caused by the Delta SARS-CoV-2 variant available at https://www.medrxiv.org/content/10.1101/2021.07.07.21260122v1.

Moline HL, Whitaker M, Deng L, et al. Effectiveness of COVID-19 Vaccines in Preventing Hospitalization Among Adults

Aged 65 Years — COVID-NET, 13 States, February–April 2021. MMWR Morb Mortal Wkly Rep 2021;70:1088-1093. DOI: http://dx.doi.org/10.15585/mmwr.mm7032e3

Nanduri S, Pilishvili T, Derado G, et al. Effectiveness of Pfizer-BioNTech and Moderna Vaccines in Preventing SARS-CoV-2 Infection Among Nursing Home Residents Before and During Widespread Circulation of the SARS-CoV-2 B.1.617.2 (Delta) Variant — National Healthcare Safety Network, March 1–August 1, 2021. MMWR Morb Mortal Wkly Rep. ePub: 18 August 2021. DOI: http://dx.doi.org/10.15585/mmwr.mm7034e3

Rosenberg ES, Holtgrave DR, Dorabawila V, et al. New COVID-19 Cases and Hospitalizations Among Adults, by Vaccination Status — New York, May 3–July 25, 2021. MMWR Morb Mortal Wkly Rep. ePub: 18 August 2021. DOI: http://dx.doi.org/10.15585/mmwr.mm7034e1

Rubin D, Eisen M, Collins S, Pennington JW, Wang X, Coffin S. SARS-CoV-2 Infection in Public School District Employees Following a District-Wide Vaccination Program — Philadelphia County, Pennsylvania, March 21–April 23, 2021. MMWR Morb Mortal Wkly Rep 2021;70:1040–1043. DOI: http://dx.doi.org/10.15585/mmwr.mm7030e1

Ryan S. McGee, Julian R. Homburger, Hannah E. Williams, Carl T. Bergstrom, Alicia Y. Zhou. Model-driven mitigation measures for reopening schools during the COVID-19 pandemic. DOI: https://doi.org/10.1101/2021.01.22.21250282

Volpp KG, Kraut BH, Ghosh S, Neatherlin J. Minimal SARS-CoV-2 Transmission After Implementation of a Comprehensive Mitigation Strategy at a School — New Jersey, August 20–November 27, 2020. MMWR Morb Mortal Wkly Rep 2021;70:377–381. DOI: http://dx.doi.org/10.15585/mmwr.mm7011a2

---

ADOPT: 333-019-1030

RULE TITLE: COVID-19 Vaccination Requirements for Teachers and School Staff

RULE SUMMARY: OAR 333-019-1030 helps to prevent and slow the spread of COVID-19 by requiring teachers, school staff, volunteers, and school-based program staff and volunteers who work in schools to be vaccinated against COVID-19 or request a medical or religious exception.

Teachers, school staff and volunteers:
(A) Means anyone age 16 and older:
(i) Who is employed at a school or anyone who is not employed but is otherwise engaged to provide goods or services to or at a school through any formal or informal agreement, whether compensated or uncompensated, and includes but is not limited to teachers, administrative staff, cleaning staff, coaches, school bus drivers, family volunteers and substitute teachers; and
(ii) Providing goods or services at or for a school that includes direct or indirect contact with students.
(B) Does not mean short-term visitors, individuals making deliveries, or school board members unless they are also volunteering in a school.

School-based program staff and volunteers:

(A) Means anyone age 16 and older:

(i) Who is employed by a school-based program or who is not employed but is otherwise engaged to provide goods or services to a school-based program through any formal or informal agreement, whether compensated or uncompensated, and includes but is not limited to teachers, administrative staff, child care staff, cleaning staff, coaches, school-based program drivers, family volunteers; and

(ii) Providing goods or services at or for a school-based program that includes direct or indirect contact with children or students.

(B) Does not mean short-term visitors or individuals making deliveries.


School means a public, private, parochial, charter or alternative educational program offering kindergarten through grade 12 or any part thereof. School does not mean stand-alone preschool program that goes up through kindergarten.


School-based program means a program serving children or students that takes place at or in school facilities.


Medical exception means that an individual has a physical or mental impairment that prevents the individual from receiving a COVID-19 vaccination.


Religious exception means that an individual has a sincerely held religious belief that prevents the individual from receiving a COVID-19 vaccination.


After October 18, 2021:

• School staff and volunteers and school-based program staff and volunteers may not teach, work, provide care, learn, study, assist, observe, or volunteer at or for a school or school-based program unless they are fully vaccinated or have provided documentation of a medical or religious exception.

• Schools and school-based programs may not employ, contract with, or accept the volunteer services of teachers, school staff and volunteers, or school-based program staff and volunteers unless they are fully vaccinated against COVID-19 or have a documented medical or religious exception.


On or before October 18, 2021, teachers, school staff and volunteers, and school-based program staff and volunteers must provide the school or school-based program with either:

• Proof of vaccination showing they are fully vaccinated; or

• Documentation of a medical or religious exception.


A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual.

Schools and school-based programs who grant an exception to the vaccination requirement must take reasonable steps to ensure that unvaccinated teachers, school staff and volunteers, and school-based program staff and volunteers are protected from contracting and spreading COVID-19.

On or before October 18, 2021, schools must have documentation that all teachers, school staff and volunteers are in compliance with this rule.

A school may request that a school-based program operating at that school, attest to whether it is, or is not, in compliance with this rule.  If a school-based program receives such a request from a school, it must respond.

A school-based program may request that a school at which they intend to operate, attest to whether it is, or is not, in compliance with this rule.  If a school receives such a request from a school-based program, it must respond.

The rule permits schools and school-based programs to:
• Have more restrictive or additional requirements, including but not limited to requiring teachers, school staff and volunteers, and school-based program staff and volunteers to have documentation of an additional or booster dose of a COVID-19 vaccine if that is recommended by the U.S. Centers for Disease Control and Prevention.
• Impose the vaccination requirements at an earlier date.

The vaccination documentation and documentation of medical and religious exceptions described in the rule must be:
• Maintained in accordance with applicable federal and state laws;
• Maintained for at least two years; and
• Provided to the Oregon Health Authority upon request.

Schools and school-based programs that violate any provision of this rule are subject to civil penalties of $500 per day per violation.

RULE TEXT:
(1) Children are required to attend school, which is a congregate setting where COVID-19 can spread easily if precautions are not taken. COVID-19 undergoes frequent mutations as it replicates, which over time has resulted in variants that are more transmissible or cause more severe disease. As of the time this rule was adopted, Delta was the variant making up more than 98 percent of sequenced specimens in Oregon. The Delta variant is approximately two to three times more infectious than early wild-type COVID-19 variants. There is emerging evidence that people infected with the Delta variant have similar viral loads regardless of vaccination status suggesting that even vaccine

breakthrough cases may transmit this variant effectively. Being vaccinated, is therefore critical to prevent spread of Delta. COVID-19 variants are running through the state's unvaccinated population and causing an increase in breakthrough cases for those who are fully vaccinated. This rule is necessary to help control COVID-19, and to protect students, teachers, school staff, and volunteers.

(2) For purposes of this rule, the following definitions apply:

(a) "COVID-19" means a disease caused by the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2).

(b) "Fully vaccinated" means having received both doses of a two-dose COVID-19 vaccine or one dose of a single-dose COVID-19 vaccine and at least 14 days have passed since the individual's final dose of COVID-19 vaccine.

(c) "Medical exception" means that an individual has a physical or mental impairment that prevents the individual from receiving a COVID-19 vaccination.

(d) "Religious exception" means that an individual has a sincerely held religious belief that prevents the individual from receiving a COVID-19 vaccination.

(e) "Proof of vaccination" means documentation provided by a tribal, federal, state or local government, or a health care provider, that includes an individual's name, date of birth, type of COVID-19 vaccination given, date or dates given, depending on whether it is a one-dose or two-dose vaccine, and the name/location of the health care provider or site where the vaccine was administered. Documentation may include but is not limited to a COVID-19 vaccination record card or a copy or digital picture of the vaccination record card, or a print-out from the Oregon Health Authority's immunization registry.

(f) "School":

(A) Means a public, private, parochial, charter or alternative educational program offering kindergarten through grade 12 or any part thereof.

(B) Does not mean stand-alone preschool program that goes up through kindergarten.

(g) "School-based program" means a program serving children or students that takes place at or in school facilities.

(h) "School-based program staff and volunteers":

(A) Means anyone age 16 and older:

(i) Who is employed by a school-based program or who is not employed but is otherwise engaged to provide goods or services to a school-based program through any formal or informal agreement, whether compensated or uncompensated, and includes but is not limited to teachers, administrative staff, child care staff, cleaning staff, coaches, school-based program drivers, family volunteers; and

(ii) Providing goods or services at or for a school-based program that includes direct or indirect contact with children or students.

(B) Does not mean short-term visitors or individuals making deliveries.

(i) "Teachers, school staff and volunteers":

(A) Means anyone age 16 and older:

(i) Who is employed at a school or anyone who is not employed but is otherwise engaged to provide goods or services to or at a school through any formal or informal agreement, whether compensated or uncompensated, and includes but is not limited to teachers, administrative staff, cleaning staff, coaches, school bus drivers, family volunteers and substitute teachers; and

(ii) Providing goods or services at or for a school that includes direct or indirect contact with students.

(B) Does not mean short-term visitors, individuals making deliveries, or school board members unless they are also volunteering in a school.

(3) After October 18, 2021:

(a) Teachers, school staff and volunteers may not teach, work, learn, study, assist, observe, or volunteer at a school unless they are fully vaccinated or have provided documentation of a medical or religious exception.

(b) A school may not employ, contract with, or accept the volunteer services of teachers, school staff or volunteers who are teaching, working, learning, studying, assisting, observing, or volunteering at a school unless the teachers or school staff are fully vaccinated against COVID-19 or have a documented medical or religious exception.

(4) On or before October 18, 2021, teachers, school staff and volunteers must provide their school, employer or contractor with either:

(a) Proof of vaccination showing they are fully vaccinated; or

(b) Documentation of a medical or religious exception.

(A) A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, on a form prescribed by the Oregon Health Authority, certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

(B) A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual.

(5) Schools that grant an exception to the vaccination requirement under section (4) of this rule must take reasonable steps to ensure that unvaccinated teachers, school staff and volunteers are protected from contracting and spreading COVID-19.

(6) On or before October 18, 2021, schools must have documentation that all teachers, school staff and volunteers are in compliance with section (4) of this rule.

(7) After October 18, 2021:

(a) School-based program staff and volunteers may not teach, work, provide care, learn, study, assist, observe, or volunteer for a school-based program unless they are fully vaccinated or have provided documentation of a medical or religious exception.

(b) A school-based program may not employ, contract with, or accept the volunteer services of school-based program staff or volunteers who are teaching, working, providing care, learning, studying, assisting, observing, or volunteering at a school-based program unless the staff or volunteers are fully vaccinated against COVID-19 or have a documented medical or religious exception.

(8) On or before October 18, 2021, school-based program staff and volunteers must provide their school-based program with either:

(a) Proof of vaccination showing they are fully vaccinated; or

(b) Documentation of a medical or religious exception.

(A) A medical exception must be corroborated by a document signed by a medical provider, who is not the individual seeking the exception, on a form prescribed by the Authority, certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent.

(B) A religious exception must be corroborated by a document, on a form prescribed by the Oregon Health Authority, signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual.

(9) School-based programs that grant an exception to the vaccination requirement under section (8) of this rule must take reasonable steps to ensure that unvaccinated school-based program staff and volunteers are protected from contracting and spreading COVID-19.

(10) On or before October 18, 2021, school-based programs must have documentation that all school-based program staff and volunteers are in compliance with section (8) of this rule.

(11) A school may request that a school-based program operating at that school, attest to whether it is, or is not, in compliance with this rule. If a school-based program receives such a request from a school, it must respond.

(12) A school-based program may request that a school at which they intend to operate, attest to whether it is, or is not, in compliance with this rule. If a school receives such a request from a school-based program, it must respond.

(13) Nothing in this rule is intended to prohibit schools or school-based programs from:

(a) Complying with the Americans with Disabilities Act and Title VII of the Civil Rights Act, and state law equivalents, for individuals unable to be vaccinated due to a medical condition or a sincerely held religious belief.

(b) Having more restrictive or additional requirements, including but not limited to requiring teachers, school staff and volunteers, and school-based program staff and volunteers to have documentation of an additional or booster dose of a COVID-19 vaccine if that is recommended by the U.S. Centers for Disease Control and Prevention.

(c) Imposing these requirements at an earlier date.

(d) Allowing a school district or other governing body to collect the documentation required under sections (4), (6), (8) and (10) of this rule.

(14) The vaccination documentation and documentation of medical and religious exceptions must be:

(a) Maintained in accordance with applicable federal and state laws;

(b) Maintained for at least two years; and

(c) Provided to the Oregon Health Authority upon request.

(15) Schools and school-based programs that violate any provision of this rule are subject to civil penalties of $500 per day per violation.

STATUTORY/OTHER AUTHORITY: ORS 413.042, ORS 431A.010, ORS 431.110, ORS 433.004

STATUTES/OTHER IMPLEMENTED: ORS 431A.010, ORS 431.110, ORS 433.004

Exhibit C



**EXECUTIVE ORDER NO. 21-29**

**COVID-19 VACCINATION REQUIREMENT FOR STATE EXECUTIVE BRANCH**

Since early 2020, the COVID-19 pandemic has upended life for Oregonians. More than 2,900 Oregonians have lost their lives to this deadly disease since March 2020, and more than 12,000 Oregonians have been hospitalized. Oregon's frontline workers, children, parents, families, and businesses have all navigated immense challenges as we have worked together to protect the health and lives of Oregonians.

The arrival of safe and effective vaccines in late 2020 marked a new, hopeful phase in our state's collective efforts to fight the pandemic. Together, we worked our way through the early days of a painfully limited supply of vaccine from the federal government, and have now vaccinated more than two and a half million Oregonians. Lifesaving vaccines are now readily available and free of cost to any Oregonian over the age of 12.

Unfortunately, a new variant of COVID-19, known as the Delta variant, has exploded in Oregon and across the country. This variant has shown itself to be dramatically more contagious and possibly more severe. It is spreading most quickly among the unvaccinated; in Oregon, the vast majority of the reported COVID-19 cases in July were among people who were unvaccinated. However, there is emerging evidence that, while vaccinated people are less likely to contract COVID-19 than unvaccinated people, when cases do occur, people infected with the Delta variant can pass it to others. As a result of the Delta variant, COVID-19 hospitalizations and COVID-19 patients in Oregon's intensive care units are higher than they have ever been during this pandemic.

Fortunately, vaccines continue to be effective against severe disease. The vast majority of patients hospitalized with COVID-19 are unvaccinated. But with so many Oregonians still unvaccinated, the spread of the Delta variant has caused a dangerous surge in COVID-19 cases and hospitalizations. This surge is imperiling the state health system's ability to manage not just COVID-19 patients, but also those who require specialized medical care after car accidents, heart attacks, and other medical emergencies. The current struggle with the Delta variant shows that, in order for us to protect ourselves and our community—from this variant and variants that will continue to evolve so long as COVID-19 is circulating widely—it is vital that as many Oregonians as possible get vaccinated, as quickly as possible.



Employers have a significant role to play in encouraging the uptake of vaccinations. Providing education, paid time off for vaccinations, facilitating access to vaccination through on-site clinics, and providing financial incentives are all strategies that employers can use to increase uptake and protect their workforces. Oregon companies like Nike and Intel have offered onsite vaccination clinics. Countless large and small businesses in Oregon have offered time off to their employees to get vaccinated. Walmart, a large employer of Oregonians, has offered $150 incentives to employees who get vaccinated. The State of Oregon has worked hard to facilitate vaccine uptake by its workforce, including providing education, onsite vaccine clinics in some locations, and financial incentives for employees who choose to be vaccinated voluntarily before August 31, 2021. This has resulted in approximately seventy percent of the state's executive branch employees getting vaccinated to date.

Given the seriousness of the COVID-19 pandemic, employer vaccination requirements have become an important tool as well. According to polling from the Kaiser Family Foundation, some adults report they will only get vaccinated if required to do so for their employment. Public and private employers across the United States are beginning to move to vaccine mandates. Washington, California, New York, and Virginia have all recently announced some form of vaccine mandate for public employees, as have New York City, Honolulu, Washington, D.C., Denver, Los Angeles, San Jose, San Diego, Richmond, and New Orleans. Private companies like Walmart, Facebook, Cisco, Frontier Airlines, United Airlines, Google, Walgreens, Walt Disney Company, Washington Post, and Tyson Foods have also moved to implement employer vaccination mandates.

We all understand the urgency of moving past this pandemic. But in order to do that, we have to get vaccinated. As the leader of the executive branch of state government, one of the Oregon's largest employers, I have a responsibility to do everything I can to protect state workers, their coworkers, and the public that relies on state services. With the Delta variant raging in Oregon, with the state's ability to fully return to in-person work continuing to be hampered by the risks from COVID-19, having implemented a series of incentives aimed at achieving voluntary compliance, and with full FDA approval of the COVID-19 vaccine expected within weeks, the time has come for any remaining state employees and those who work alongside them in state government to get vaccinated.




**EXECUTIVE ORDER NO. 21-29**
**PAGE THREE**

**NOW, THEREFORE, IT IS ORDERED AND DIRECTED:**

Pursuant to my authorities under Article V, section 1, of the Oregon Constitution, the emergency invoked in Executive Order 20-03, and ORS 401.168, I hereby order:

1.  Definitions.

    a.  *"Executive Branch"* has the meaning given to the term Executive Department in ORS 174.112.

    b.  *"COVID-19"* means a disease caused by the severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2).

    c.  *"Fully Vaccinated"* means having received both doses of a two-dose COVID-19 vaccine or one dose of a single-dose COVID-19 vaccine and at least 14 days have passed since the individual's final dose of COVID-19 vaccine.

    d.  *"Proof of Vaccination"* means documentation provided by a tribal, federal, state or local government, or a health care provider, that includes an individual's name, date of birth, type of COVID-19 vaccination given, date or dates given, depending on whether it is a one-dose or two-dose vaccine, and the name/location of the health care provider or site where the vaccine was administered. Documentation may include but is not limited to a COVID-19 vaccination record card, a copy or digital picture of the vaccination record card, or a print-out from the Oregon Health Authority's immunization registry.

    e.  *"Employee"* means any person employed by the Executive Branch, but does not include individuals whose only work for the Executive Branch is as a volunteer board, commission, or council member, and whose compensation is limited to a stipend or per diem; does not include elected or appointed District Attorneys; and does not include Workers.

    f.  *"Worker"* means an individual who is not an Employee, and is engaged to provide goods or services to the Executive Branch through any formal or informal agreement, whether compensated or uncompensated, including Oregon Corrections Enterprises, but does not include a visitor,


**EXECUTIVE ORDER NO. 21-29**
**PAGE FOUR**

   patron, adult in custody, or board, commission, or council member.
   Individuals are exempt from the definition of Worker unless any
   provision of the agreement to provide goods or services requires work to
   be performed in person and on site at an Executive Branch worksite,
   regardless of frequency, whether other persons are present, or any
   contingent nature of that requirement.

2.  <u>Prohibitions.</u> This order prohibits the following:

  a.  Any Employee or Worker from engaging in work for the Executive
   Branch after October 18, 2021, or six weeks after the date that the
   United States Food and Drug Administration approves a vaccination
   against COVID-19, whichever is later, if the Employee or Worker has
   not been Fully Vaccinated against COVID-19.

  b.  The Executive Branch from permitting any Employee or Worker to
   engage in work for the Executive Branch after October 18, 2021, or six
   weeks after the date that the United States Food and Drug
   Administration approves a vaccination against COVID-19, whichever is
   later, if the Employee or Worker has not been fully vaccinated against
   COVID-19 and provided proof or documentation thereof, as required
   under this Executive Order.

3.  <u>Documentation of Vaccination for Employees.</u> On or before October 18,
  2021, or six weeks after the date that the United States Food and Drug
  Administration approves a vaccination against COVID-19, whichever is later,
  Employees must provide their employer with either:

  a.  Proof of Vaccination showing they are fully vaccinated; or

  b.  A written request for an exception if available under paragraph 5 of this
   Executive Order.

4.  <u>Documentation of Vaccination for Workers.</u> On or before October 18, 2021,
  or six weeks after the date that the United States Food and Drug
  Administration approves a vaccination against COVID-19, whichever is later,
  the Executive Branch contracting agency must have documentation that all
  Workers subject to this Executive Order are in compliance with paragraph



2 of this Executive Order, or that an exception applies under paragraph 6 of this Executive Order.

5. <u>Compliance with State and Federal Law.</u> The Executive Branch is expected to make reasonable accommodations in order to comply with the Americans with Disabilities Act and Title VII of the Civil Rights Act, and state law equivalents, for individuals unable to be vaccinated due to disability, qualifying medical condition, or a sincerely held religious belief.

6. <u>Exceptions to Prohibition.</u> The prohibitions described in paragraph 2 of this Executive Order do not apply if:

   a. An exception available under paragraph 5 of this Executive Order has been requested in writing by the Employee or Worker, and the request is pending or has been approved.

   b. The director of a contracting agency has determined in writing that there is a critical business need for a Worker to perform work without first coming into compliance with paragraph 2 of this Executive Order.

7. <u>Enforcement.</u> Employees who fail to comply with this directive will face personnel consequences up to and including separation from employment. Contracting agencies may take any action in contract, at law, or in equity for any noncompliance of Workers and entities for which a Worker is an employee, contractor, or volunteer. Timelines in this Executive Order may be extended at the Governor's discretion.

8. <u>Executive Branch May Exceed These Requirements.</u> Nothing in this order prohibits entities within the Executive Branch from implementing requirements that exceed the requirements of this Executive Order, provided that compliance with paragraph 5 of this Executive Order is maintained.

9. <u>Legal Effect.</u> Pursuant to ORS 401.192(1), the directives set forth in this Executive Order shall have the full force and effect of law, and any existing laws, ordinances, rules and orders shall be inoperative to the extent they are inconsistent with the directives set forth in this Order.

10. <u>Discretion; No Right of Action.</u> Any decision made by the Governor pursuant to this Executive Order is made at her sole discretion. This Executive Order is not intended to create, and does not create, any individual





right, privilege, or benefit, whether substantive or procedural, enforceable at law or in equity by any party against the State of Oregon, its agencies, departments, or any officers, employees, or agents thereof.

11. <u>Severability.</u> If any section, subsection, paragraph, subparagraph, sentence, clause, phrase, or word of this Executive Order is for any reason held to be invalid, such holding shall not affect the validity of the remaining portions of this Order.

12. <u>Effective date.</u> This Executive Order is effective August 13, 2021, and remains in effect until terminated by the Governor.

Done at Salem, Oregon, this 13th day of August, 2021.

Kate Brown

_____
Kate Brown
GOVERNOR

ATTEST:

_____
Shemia Fagan
SECRETARY OF STATE

