IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


JOSHUA WILLIAMS; JENNIFER            Civ. No. 6:21-cv-01332-AA
LEWIS; MICHAEL MILLER;
PHILLIP KEARNEY; JAY HICKS;
JANNA COCHRAN; JULIE ANN
SUDERMAN,

               Plaintiffs,                  **OPINION & ORDER**

      v.

KATE BROWN; PATRICK ALLEN;
OREGON HEALTH AUTHORITY,

               Defendants.
_____

AIKEN, District Judge.

This case comes before the Court on Plaintiffs' Emergency Motion for Temporary Restraining Order. ECF No. 11. The Court heard oral argument on October 18, 2021 by telephone. ECF No. 19. For the reasons set forth below, the motion is DENIED.

### LEGAL STANDARD

"In deciding whether to grant a motion for a temporary restraining order ("TRO"), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *Pacific Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp.3d 1219. 1222 (D. Or. 2016). A preliminary injunction is

an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction must show (1) that he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in his or her favor; and (4) an injunction is in the public interest. *Id.* at 20.

In the Ninth Circuit, courts may apply an alternative "serious questions" test, which allows for a preliminary injunction where a plaintiff shows that "serious questions going to the merits" were raised and the balance of hardships tips sharply in plaintiff's favor, assuming the other two elements of the *Winter* test are met. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). This formulation applies a sliding scale approach where a stronger showing of one element may offset a weaker showing in another element. *Id.* at 1131. Nevertheless, the party requesting a preliminary injunction must carry its burden of persuasion by a "clear showing" of the four elements set forth above. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012).

## BACKROUND

### I.    COVID-19 and the Vaccines

COVID-19 is an infectious disease caused by the virus SARS CoV-2. Sutton Decl. ¶ 4.[1]  ECF No. 14.  COVID-19 is highly transmissible, primarily through

---

[1] Dr. Melissa Sutton is the Medical Director of Respiratory Viral Pathogens in the Public Health Division of the Oregon Health Authority. Sutton Decl. ¶ 1. Dr. Sutton is a board-certified physician with a master's degree in public health in epidemiology in addition to her medical doctorate. *Id.* at ¶ 2. Plaintiffs have not submitted any contrary declaration by a medical expert. In support of their

respiratory droplet transmission. *Id.* at ¶¶ 4-6. The virus also mutates as it replicates and produces variants which "may have characteristics of public health consequence, such as evidence of increased transmissibility, evidence of increased disease severity, and reduced effectiveness of diagnostics, treatments, or vaccines." *Id.* at ¶ 7.

In June 2021, the Delta variant of the COVID-19 virus emerged as a "variant of concern" and is approximately twice as contagious as earlier variants of the virus. Sutton Decl. ¶ 7. As of October 7, 2021, the U.S. Centers for Disease Control and Prevention ("CDC") have confirmed more than 43.9 million cases of COVID-19 in the United States, and 707,065 people have died of COVID-19. *Id.* at ¶ 9. In Oregon, the CDC reports that there have been 338,130 cases of COVID-19 and 3,900 Oregonians have died of the disease as of October 6, 2021. *Id.* The number of COVID-19 cases peaked in Oregon in August and September of 2021 with more than 1,178 Oregonians hospitalized with COVID-19 on September 1, 2021. *Id.* at ¶¶ 8-10. "This represented a more than two-fold increase over the previous peak of 584 on November 30, 2020." *Id.* at ¶ 10.

The surge in COVID-19 cases put enormous pressure on Oregon's medical resources and infrastructure. "Caring for this large number of patients with COVID-

---

Reply, Plaintiffs submitted a Declaration by their counsel, which included an attached exhibit of a document filed in *Zywicki v. Gregory Washington et al.*, Case No. 1:21-cv-00894-AJT-MSN in U.S. District Court for the Eastern District of Virginia. ECF No. 18. This document does not meet the requirements for an affidavit or declaration as set forth in Local Rule 10-3 in that it is unsigned, not filed separately, and does not present itself as being offered under penalty of perjury. The Court's review of the docket of the *Zywicki* matter indicates that this document was originally attached as an exhibit to the complaint in *Zywicki* and that the *Zywicki* case was voluntarily dismissed on August 20, 2021, approximately two weeks after it was filed.

19 along with other patients presenting for care has strained the ability of hospitals to provide care for everyone, forcing most to postpone non-urgent care, and leaving many people in Oregon suffering as they wait for non-urgent procedures, such as hip transplants." Sutton Decl. ¶ 10.   Aside from the risk of death, "[i]ndividuals who contract COVID-19 may suffer prolonged illness with severe complications, such as heart attack, stroke, blood clots and respiratory failure as well as long-term post-COVID conditions." *Id.* at ¶ 20.

"Vaccination remains the most effective tool to reduce the spread of COVID-19." Sutton Decl. ¶ 13.   "There are currently three safe and highly effective vaccinations available for use in the United States from Pfizer BioNTech, Moderna and Johnson & Johnson/Janssen." *Id.* at ¶ 11.  The Pfizer vaccine was granted official approval by the FDA on August 23, 2021, and the Moderna and Johnson & Johnson vaccines are approved under an emergency use authorization for individuals 18 years of age and older. *Id.*  The CDC recommends that all individuals aged 12 and older be vaccinated against COVID-19. *Id.*  "Vaccines protect individuals who are vaccinated as well as those around them as vaccinated individuals are much less likely to become infected with COVID-19 and transmit this infection to others," which "is especially important when the surrounding individuals are unvaccinated such as children younger than 12 years of age who are not yet eligible for COVID-19 vaccinations or individuals at high risk of complications because of underlying medical conditions." *Id.* at ¶ 13.

"Unvaccinated individuals exposed to COVID-19 are very likely to become infected in the absence of mitigation measures and may then transmit the virus to others," while "[f]ully vaccinated people get COVID-19 (known as vaccine breakthrough infections) much less often than unvaccinated people." Sutton Decl. ¶ 7. In Oregon, 70% of adults have been vaccinated, which substantially reduced the number of COVID-19 deaths during the surge in cases observed in August and September of 2021. *Id.* at ¶10. An additional 5.8% of Oregonians have received one dose of either the Moderna or Pfizer vaccine but have not yet received the second dose and are considered partially vaccinated. *Id.* at ¶ 15. There are adequate supplies available to vaccinate all eligible Oregonians. *Id.* at ¶ 11.

The vaccines have demonstrated continued effectiveness in protecting against the Delta variant of COVID-19. Sutton Decl. ¶ 12. "While hospitalizations and deaths soared among those not fully vaccinated, individuals who were fully vaccinated made up only a small percentage of hospitalizations and deaths during the current surge of cases in Oregon." *Id.* at ¶ 13. "The majority of COVID-19 cases, hospitalizations and deaths during this surge are among those who are not fully vaccinated" and "counties with higher vaccination rates are associated with lower case rates." *Id.* at ¶ 21.

The strength and duration of immunity following COVID-19 infection "is poorly understood," but the "majority of studies describing SARS-CoV-2 neutralizing antibodies (antibodies which prevent viral replication and are considered a measurement of immunity) are limited to three months following infection." Sutton

Decl. ¶ 16.  A study of the development of neutralizing antibodies following COVID-19 infection "demonstrated that 12% of individuals did not develop neutralizing antibodies and an additional 27% demonstrated rapid waning of neutralizing antibodies" within 180 days of infection.  *Id.* at ¶ 17.  "The effectiveness and duration of natural immunity may vary widely between individuals and a history of previous infection may not provide durable protection against reinfection."  *Id.*  "In a recent study of the risk of reinfection among vaccinated and unvaccinated individuals previously infected with COVID-19, unvaccinated individuals had twice the reinfection rate of vaccinated individuals" and the CDC "recommends that all individuals previously infected with COVID-19 be vaccinated to reduce the risk of reinfection."  *Id.* at ¶ 19.

## II.    Oregon Vaccine Mandates

On August 13, 2021, Oregon Governor Kate Brown issued Executive Order ("EO") 21-29 which requires all employees and workers employed by the executive branch of the Oregon state government to be fully vaccinated by October 18, 2021. Employees who do not comply with the requirements of EO 21-29 "will face personnel consequences up to and including separation from employment."  However, the state will provide "reasonable accommodations" for "individuals unable to be vaccinated due to disability, qualifying medical condition, or sincerely held religious belief." Requests for such exceptions are to be made in writing and the vaccination requirement will not apply while such a request is pending or has been approved.

The Oregon Health Authority has also enacted administrative rules mandating vaccination. Oregon Administrative Rule ("OAR") 333-019-1010 provides that healthcare providers and healthcare staff who work in a healthcare setting are to be fully vaccinated by October 18, 2021 unless they have provided documentation of a medical or religious exception. Medical exceptions "must be corroborated by a document signed by a medical provider . . . certifying that the individual has a physical or mental impairment that limits the individual's ability to receive a COVID-19 vaccination based on a specified medical diagnosis, and that specifies whether the impairment is temporary in nature or permanent." OAR 333-019-1010(4)(b)(A). A religious exception "must be corroborated by a document . . . signed by the individual stating that the individual is requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief and including a statement describing the way in which the vaccination requirement conflicts with the religious observance, practice, or belief of the individual." OAR 333-019-1010(4)(b)(B). "Employers of healthcare providers or healthcare staff, contractors, and responsible parties who violate any provision of this rule are subject to civil penalties of $500 per day per violation." OAR 333-019-1010(9).

Oregon Administrative Rule 333-019-1030 requires teachers, school staff, and volunteers to be fully vaccinated by October 18, 2021 unless they have provided documentation of a medical or religious exception. OAR 333-019-1030(3). The requirements of the medical and religious exceptions are identical to those set forth in OAR 333-019-1010(4)(b). OAR 333-019-1030(4)(b). "Schools and school-based

programs that violate any provision of this rule are subject to civil penalties of $500 per day per violation." OAR 333-019-1030(15).

### III.  Plaintiffs

Plaintiffs in this case are unvaccinated employees and workers who will be subject to the requirements of one or more of the vaccine mandates described in the previous section.  Each Plaintiff has previously contracted and recovered from COVID-19 and each believes that their infection-based immunity is at least as effective as vaccination-based immunity.  FAC ¶ 2.

Plaintiff Joshua Williams is an EMT in Marion County, Oregon and works as the station chief for Aurora Fire & Rescue.  FAC ¶ 19.  Williams contracted COVID-19 in January 2021 and has since recovered.  *Id.* at ¶¶ 22-23.  At oral argument, Plaintiffs' counsel advised the Court that Williams did not request an exception to the vaccine mandate.

Plaintiff Jennifer Lewis is an office manager and treatment coordinator at Klamath Falls Orthodontics in Klamath County, Oregon.  FAC ¶ 25.  Lewis contracted COVID-19 in December 2020 and has since recovered.  *Id.* at ¶¶ 27-28.  At oral argument, Plaintiffs' counsel advised the Court that Lewis did not request an exception to the vaccine mandate.

Plaintiff Michael Miller lives in Canyon County, Idaho and works as a correctional officer with the Oregon Department of Corrections.  FAC ¶ 31.  Miller contracted COVID-19 in November 2020 and has since recovered.  *Id.* at ¶¶ 32-33.  At

oral argument, Plaintiffs' counsel advised the Court that Miller has requested an exception to the vaccine mandate and the request remains pending.

Plaintiff Philip Kearney lives in Clackamas County, Oregon and works as an assistant special agent of an investigatory unit of the Oregon Department of Justice. FAC ¶ 37. Kearny contracted COVID-19 in "the spring of 2021" and has since recovered. *Id.* at ¶¶ 38-39. Kearny has requested an exception from the vaccine mandate based on a "moral objection to the vaccination" but had not received a response as of the filing of the FAC. *Id.* at ¶ 40. At oral argument, Plaintiffs' counsel advised the Court that Kearny's request for an exception has been approved.

Plaintiff Jay Hicks lives in Malheur County, Oregon and works as a corrections officer for the Oregon Department of Corrections. FAC ¶ 41. Hicks contracted COVID-19 in September 2020 and has since recovered. *Id.* at ¶¶ 42-43. Hicks's "doctor has advised him that it is medically unnecessary to obtain the COVID-19 vaccination and that his decision not to get the vaccine is medically advisable." *Id.* at ¶ 45. At oral argument, Plaintiffs' counsel advised the Court that Hicks has requested an exception to the vaccine mandate and the request was denied.

Plaintiff Janna Cochran lives in Washington County, Oregon and works for the Willamette Education Service District as a special education teacher. FAC ¶ 47. Cochran contracted COVID-19 in July 2020 and subsequently recovered. *Id.* at ¶ 48. Cochran "has sincere moral objections to taking the COVID-19 vaccination and has submitted a request for religious accommodation to her employer," but had not received a response as of the filing of the FAC. *Id.* at ¶ 51. At oral argument,

Plaintiffs' counsel advised the Court that Cochran's request for an exception had been approved.

Plaintiff Julie Ann Suderman lives in Marion County, Oregon and "works in education." FAC ¶ 53. This allegation is so vague that the Court cannot determine whether Suderman is even subject to any of the challenged vaccination mandates, although Plaintiffs allege that Suderman's unnamed employer "is enforcing the Governor's school vaccination mandate." *Id.* at ¶ 58. Suderman contracted COVID-19 in November 2020 and has since recovered. *Id.* at ¶ 54. Suderman's personal physician has advised her that "it is medically unnecessary for her to obtain the vaccination, and recommended against her getting it." *Id.* at ¶ 57. At oral argument, Plaintiffs' counsel advised the Court that Suderman had requested an exception to the vaccine mandate and the request has been approved.

Plaintiffs do not wish to be vaccinated and have brought this action challenging the requirement that they be vaccinated as a condition of their continued employment. Plaintiffs filed this action on September 9, 2021. ECF No. 1. Plaintiffs filed their First Amended Complaint and Motion for TRO on September 28, 2021. ECF Nos. 10, 11. By joint request of the parties, the Court set oral argument for October 18, 2021. ECF No. 12.

## DISCUSSION

As relevant to the present motion, Plaintiffs bring claims for violation of their rights to due process and equal protection under the Fourteenth Amendment pursuant to 42 U.S.C. § 1983. Plaintiffs seek a TRO and preliminary injunction

"prohibiting Defendants Oregon Governor Kate Brown and the Oregon Health Authority, with its Director Patrick Allen and all agents or employees, from enforcing Executive Order 21-29 and OAR 333-019-1010, and OAR 333-019-1030 ('vaccine mandates') by charging any fee or imposing any penalty for failure to obtain verification or proof of a COVID-19 vaccination."  Pl. Mot. at 2.  In the event their Motion is denied, Plaintiffs also request that this Court issue an injunction pending appeal.

As discussed in the following sections, the Court concludes that Plaintiffs have failed to carry their burden on any of the *Winter* factors.

## I.    Likelihood of Success on the Merits

To prevail on a motion for preliminary injunction, a plaintiff must show either a likelihood of eventual success on the merits or, under the Ninth Circuit's alternative "sliding scale" formulation of the test, serious questions going to the merits of their claims.  *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1131-32. However, a court's decision on a motion for preliminary injunction is not a ruling on the merits of the claim.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

### A. Due Process Claims

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.  "To state a prima facie substantive or procedural due process claim, one must, as a threshold matter, identify a liberty or property interest

protected by the Constitution." *United States v. Guillen-Cervantes*, 748 F.3d 870, 872 (9th Cir. 2014).

### 1. Procedural Due Process

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) a lack of adequate process. *Id.* at 1090. However, "laws of general applicability affecting a broad geographic area" do not ordinarily implicate individual procedural due process concerns. *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968-70 (9th Cir. 2003); *Mendez v. City of Boise*, 845 F. App'x 636, 637 (9th Cir. 2021). "General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard," and "[t]heir rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915); *see also Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994) (In cases involving laws of general applicability, due process is satisfied when the governmental body "performs its responsibilities in the manner normally prescribed by law."); *Underwood v. City of Starkville*, ___F. Supp.3d___, CIVIL ACTION NO. 1:20-CV-00085-GHD-DAS, 2021 WL 1894900, at *6 (N.D. Miss. May 11, 2021) ("It would be impractical—if not nonsensical—to allow

every individual member of the public to voice their opinion directly and personally before a rule of general applicability is put into effect, particularly during a time of crisis like [the COVID-19 pandemic.]").

Although Plaintiffs object that the vaccine mandates are not "legislative" acts, the Ninth Circuit has held that "[i]n determining when the dictates of due process apply . . . we find little guidance in formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions," and "the character of the action, rather its label, determines whether those affected by it are entitled to constitutional due process." *Harris v. Cnty. of Riverside*, 904 F.2d 497, 501-02 (9th Cir. 1990); *see also Curlott v. Campbell*, 598 F.2d 1175, 1181 (9th Cir. 1979) ("At the outset we doubt very much that procedural due process prior to a reduction in benefits is required when an agency made a broadly-applicable, legislative-type decision." (citing *Bi-Metallic*, 239 U.S. at 441)). "The proper remedy in those circumstances is judicial review after promulgation of the new rule." *Curlott*, 598 F.2d at 1181.

In this case, the vaccine mandates are plainly laws of broad applicability and apply respectively to healthcare workers, school employees, and state executive employees across Oregon. As the Ninth Circuit observed in *Curlott*, the "proper remedy" to such rules is judicial review and these specific mandates have consistently survived review by the Oregon state courts. *See, e.g.,* Def. Resp. Ex. 3 (Oregon Court of Appeals order denying a motion to stay enforcement of OAR 333-019-1010 in *Oregon Healthcare Workers for Medical Freedom v. Oregon Health Authority*, Case No. A176900); Ex. 4 (Crook County Circuit Court order denying a TRO and

preliminary injunction in *Oregon Fraternal Order of Police v. Brown*, Case No. 21CV35125).  And to the extent that any process is required, the mandates themselves provide a process for an employee to request individual exceptions for medical reasons, disability, or sincerely held religious beliefs and several of the Plaintiffs in this case have sought and received such exceptions.

Accordingly, the Court concludes that Plaintiffs have not demonstrated a likelihood of success on the merits of their procedural due process claim, nor have they demonstrated serious questions going to the merits of that claim.

### 2. Substantive Due Process

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government."  *Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1195 (9th Cir. 2013).  Only "the most egregious official conduct can be said to be arbitrary in the constitutional sense."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotation marks and citation omitted).  "To constitute a violation of substantive due process, the alleged deprivation must shock the conscience and offend the community's sense of fair play and decency."  *Sylvia Landfield*, 729 F.3d at 1195 (internal quotation marks and citation omitted).  The Supreme Court has held "that the 'shock the conscience' standard is satisfied where the conduct was intended to injure in some way unjustifiable by any government interest or in some circumstances if it resulted from deliberate indifference."  *Rosales-Mireles v. United States*, ___U.S.___, 138 S. Ct. 1897, 1906 (2018) (internal quotation marks and citation omitted).

The Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Supreme Court has established "a threshold requirement—that a challenged state action implicate a fundamental right—before requiring more than a reasonable relation to a legitimate state interest to justify the action." *Id.* at 722.

Here, Plaintiffs contend that the vaccine mandates implicate a fundamental right to bodily integrity and privacy and that strict scrutiny should apply. Under strict scrutiny, Plaintiffs contend that the Court should strike down vaccine mandates because they do not provide an exception for individuals with infection-based immunity and so are not narrowly tailored to achieve their purpose.

As the Seventh Circuit recently noted, "such an argument depends on the existence of a fundamental right ingrained in the American legal tradition." *Klassen v. Trustees of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir. 2021). Plaintiffs' argument was foreclosed more than a century ago by *Jacobson v. Massachusetts*, 197 U.S. 11 (1905), in which the Supreme Court sustained a criminal conviction for refusing to be vaccinated. In *Jacobson*, the appellant challenged a statute passed by the Massachusetts legislature that authorized the board of health of any city or town to require the vaccination of the town's inhabitants, if it was necessary for public health or safety. *Jacobson*, 197 U.S. at 12. Under that statute, the board of health for Cambridge, Massachusetts issued a smallpox vaccine mandate and only allowed exceptions for children. *Id.* at 12-13. The appellant, Jacobson, refused to be

vaccinated and was criminally charged and convicted by a jury. *Id.* at 13. On appeal, Jacobson argued that the vaccine mandate violated his constitutional rights. *Id.* at 26.

The Supreme Court rejected Jacobson's argument, holding that the exercise of liberty has always been subject to restraints imposed for the good of the whole commonwealth and that the police power of the state rests upon the ability to set such restraints. *Id.* at 29. In the specific case of vaccination, the Court observed that the Massachusetts legislature had conferred authority to impose vaccine mandates on the local health board because of their "fitness to determine such questions," and that the delegation was not constitutionally improper. *Id.* at 27. The Court observed that "in every well-ordered society charged with the duty of conserving the safety of its members the rights of the individual in respect of his liberty may at times, under pressure of great dangers, be subjected to such restraint to be enforced by reasonable regulations, as the safety of the general public may demand." *Id.* at 29. The Court rejected the notion that a vaccine mandate violated either the liberty interests secured by the due process clause of the Fourteenth Amendment or the equal protection guarantees. *Id.* at 29-30. The Court also observed that questions concerning the efficacy of vaccination as a means of disease control was something considered by the state legislature in delegating authority to the local health boards and Massachusetts "was not compelled to commit a matter involving public health and safety to the final decision of a court or jury," and reserved the question of judicial involvement to instances where the states

undertake a "plain, palpable invasion of rights secured by the fundamental law" under the guise of police powers or when they enact a statute purportedly for the benefit of public health or safety but which "has no real or substantial relation to those objects." *Id.* at 30-31. "Whatever may be thought of the expediency of this statute, it cannot be affirmed to be, beyond question, in palpable conflict with the Constitution. Nor, in view of the methods employed to stamp out the disease of smallpox, can anyone confidently assert that the means prescribed by the state to that end has no real or substantial relation to the protection of public health and the public safety." *Id.* at 31. As the Supreme Court memorably summarized in its conclusion:

> We are unwilling to hold it to be an element of liberty secured by the Constitution of the United States that one person, or a minority of persons, residing in any community and enjoying the benefits of its local government, should have the power thus to dominate the majority when supported in their action by the authority of the state. While this court should guard with firmness every right appertaining to life, liberty, or property as secured to the individual by the supreme law of the land, it is of the last importance that it should not invade the domain of local authority except when it is plainly necessary to do so in order to enforce that law. The safety and the health of the people of Massachusetts are, in the first instance, for that commonwealth to guard and protect. They are matters that do not ordinarily concern the national government. So far as they can be reached by any government, they depend, primarily upon such actions as the state, in its wisdom, may take; and we do not perceive that this legislation has invaded any right secured by the Federal Constitution.

*Id.* at 38-39.

In the context of COVID-19, courts across the country have concluded that *Jacobson* established that there is no fundamental right to refuse vaccination. *See, e.g., Klassen*, 7 F.4th at 593 ("Given *Jacobson v. Massachusetts*, which holds that a

state may require all members of the public to be vaccinated against smallpox, there can't be a constitutional problem with vaccination against SARS-CoV-2." (internal citation omitted)); *Norris v. Stanley*, ___F. Supp.3d___, No. 1:21-cv-756, 2021 WL 4738827, at *2 (W.D. Mich. Oct. 8, 2021) ("Plaintiff is absolutely correct that she possesses those rights [to privacy and bodily integrity], but there is no fundamental right to decline a vaccination."); *Johnson. v. Brown*, Case No. 3:21-cv-1494-SI, 2021 WL 4846060, at *13 (D. Or. Oct. 18, 2021) ("As *Jacobson* reveals, the right to refuse vaccination is not deeply rooted in this nation's history.  In fact, the opposite is true." (internal citation and quotation marks omitted)).

Courts have also consistently held that, following *Jacobson*, challenges to vaccination mandates are properly considered under rational basis review.  *See, e.g., Kheriaty v. Regents of the Univ. of Cal.*, Case No. SACV 21-01367 JVS (KESx), 2021 WL 4714664, at *6 (C.D. Cal. Sept. 29, 2021) ("While the case predates the formalized tiers of review, the [Supreme] Court later acknowledged that *Jacobson* 'essentially applied rational basis review.'" (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, ___U.S.___, 141 S. Ct. 63, 70 (2020) (Gorsuch, J. concurring)); *Norris*, 2021 WL 4738827, at *1 ("Because this Court finds no fundamental right is implicated in the present matter, the Court must apply a rational basis standard."); *Johnson*, 2021 WL 4846060, at *14 ("In sum, under *Jacobson* followed by over a century's worth of rulings with the consistent use of rational basis review to assess mandatory vaccination measure, rational basis review applies to Plaintiffs' claims in this case." (internal quotation marks and citations omitted)); *Valdez v. Grisham*, ___F.

Supp.3d___, Case No. 21-cv-783 MV/JHR, 2021 WL 4145746, at *5 (D.N.M. Sept. 13, 2021) ("Indeed, federal courts have consistently held that vaccine mandates do not implicate a fundamental right and that rational basis review therefore applies in determining the constitutionality of such mandates."). The Court joins this growing consensus and concludes that there is no fundamental right under the Constitution to refuse vaccination and that rational basis review applies to Plaintiffs' due process challenge.

Under rational basis review, state conduct is presumed valid and will be upheld so long as it is "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "Governmental action is rationally related to a legitimate goal unless the action is clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare." *Sylvia Landfield*, 729 F.3d at 1193 (internal quotation marks and citation omitted).

Applied to the present case, the Court has no trouble concluding that the vaccine mandates are rationally related to a legitimate state interest. The preamble to EO 21-29 sets forth the history of the COVID-19 pandemic in Oregon and the efficacy of the vaccines before concluding: "With the Delta variant raging in Oregon, with the state's ability to fully return to in-person work continuing to be hampered by the risks from COVID-19, having implemented a series of incentives aimed at achieving voluntary compliance, and with full FDA approval of the COVID-19 vaccine expected within weeks, the time has come for any remaining state employees and

those who work alongside them in state government to get vaccinated." OAR 333-019-1030 and OAR 333-019-1010 similarly open with preambles describing the need for mandatory vaccination in order to control the spread of COVID-19 and to protect both the specific groups subject to vaccination and the population at large. As Dr. Sutton explained in her Declaration, the decision to extend this mandate to employees and workers who have previously contracted COVID-19 was based on evidence that infection-based immunity was not as durable or reliable as the protection conferred by the vaccines and on the CDC's recommendation that all eligible people be vaccinated, regardless of prior infection.

As Judge Simon observed in another recent challenge to Oregon's vaccine mandates, the requirements imposed "are rationally related to Defendants' interests in slowing the spread of COVID-19, protecting Oregon's citizens, protecting children and teachers in schools, and preserving healthcare resources and protecting patients." *Johnson*, 2021 WL 4846060, at *14.

Because the vaccine mandates easily survive rational basis review, the Court concludes that Plaintiffs have not shown a likelihood of success on the merits of their claim for violation of their substantive due process rights, nor have they shown serious questions going to the merits of that claim.

### B. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no state shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be

treated alike." *City of Cleburne*, 473 U.S. at 439 (internal quotation marks and citation omitted). To prevail on an equal protection claim, a plaintiff must "show that a class that is similarly situated has been treated disparately." *Boardman v. Inslee*, 978 F.3d 1092, 1117 (9th Cir. 2020) (internal quotation marks and citation omitted). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest," but heightened standards of review apply when suspect classifications like race, alienage, or national origin, are implicated or "when state laws impinge on personal rights protected by the Constitution." *City of Cleburne*, 473 U.S. at 440.

As with substantive due process, courts have routinely rejected the argument that vaccine mandates will trigger heightened scrutiny under the Equal Protection Clause and have instead applied rational basis review. *See, e.g., Kheriaty*, 2021 WL 4714664, at *7 (rejecting heightened scrutiny based on classification of "individuals who have vaccine-induced immunity and individuals who have infection-induced immunity,"); *Norris*, 2021 WL 4738827, at *1-3 (finding no suspect classification or fundamental right implicated by a generally applicable vaccine mandate). The Court is fully in agreement with this growing consensus and finds that no fundamental right or suspect classification is implicated by the Oregon vaccine mandates and so rational basis review will apply to Plaintiffs' claims.

The rational basis review test is functionally the same under substantive due process and the Equal Protection Clause. *Gamble v. City of Escondido*, 104 F.3d 300, 307 (9th Cir. 1997). Under the Equal Protection Clause, if there is no suspect class

at issue, a policy "need only rationally further a legitimate state purpose to be valid." *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 291 (1984) (internal quotations omitted). The Equal Protection clause will be satisfied is there is a "plausible policy reason for the classification," the government decisionmaker relied on facts, that "may have been considered to be true," and "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). "Given the standard of review, it should come as no surprise that the [courts] hardly ever strike down a policy as illegitimate under rational basis scrutiny." *Trump v. Hawaii*, ___U.S.___, 138 S. Ct. 2392, 2420 (2018).

As with Plaintiffs' substantive due process claim, the Court has no trouble discerning a legitimate state interest in slowing the spread of COVID-19 and the Court concludes that the vaccine mandates are rationally related to furthering that interest. The Court concludes that the vaccine mandates would survive rational basis review and that Plaintiffs have not shown a likelihood of success on the merits of their equal protection claim or even serious questions going to the merits of that claim.

## II.    **Irreparable Harm**

A plaintiff seeking an injunction must "must establish that irreparable harm is *likely*, not just possible." *Alliance for the Wild Rockies*, 632 F.3d at 1131. In this case, Plaintiffs allege that they will suffer irreparable harm in the form of violation of their constitutional rights and loss of employment for refusing vaccination. As

discussed in the preceding section, the Court has concluded that Plaintiffs have not established even serious questions going to the merits of their claims for violation of constitutional rights and so it is not necessary for the Court to examine whether violation of those rights would establish irreparable harm.

On the issue of loss of employment, the Court notes that most of the Plaintiffs have either already received an exception to the vaccine mandates or have submitted a request for an exception and those requests remain pending. Those Plaintiffs have failed to demonstrate a likelihood of irreparable harm, either because they will not be terminated under the mandates or because the prospect of termination is entirely speculative.

Two Plaintiffs have declined to apply for exceptions and a third has had his request for an exception denied and those Plaintiffs maintain that they face the prospect of losing their jobs. In *Johnson*, Judge Simon expressed skepticism that such a harm would be "irreparable," outside of exceptional circumstances because it can be remedied with monetary damages. *Johnson*, 2021 WL 4846060, at *25; *see also Valdez*, 2021 WL 4145746, at *12 (finding no irreparable harm because "being so terminated/prevented from working as a nurse does not equate to an irreparable harm."). The Court is inclined to agree and concludes that Plaintiffs have not demonstrated irreparable harm, but it is not ultimately necessary to resolve this issue because even if the Court were to assume that Williams, Lewis, and Hicks suffered an irreparable harm, they have failed to carry their burden on the other elements of their request for an injunction.

### III.    Balance of Equities and the Public Interest

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted).  The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties."  *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014).   When the government is a party, these last two factors of the preliminary injunction analysis will merge.  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

In this case, the Court concludes that the balance of the equities and the public interest weigh overwhelmingly against the requested injunction.  As discussed above, Oregon has a legitimate and compelling interest in slowing the spread of COVID-19 and in protecting the lives and health of the people of Oregon.  The challenged vaccine mandates are directly aligned with that interest.  The record shows that the recent surge in COVID-19 cases has strained Oregon's medical infrastructure and resources to the breaking point.  The most effective tool available for stemming the tide of COVID-19 is vaccination.  And while Oregon's high rate of voluntary vaccination has undoubtably helped in sparing the state from the full force of the pandemic witnessed elsewhere in the country, it has not been enough stave off a massive surge in Delta variant cases.  As set forth in the Sutton Declaration, the overwhelming majority of COVID-19 hospitalizations and deaths have been among the unvaccinated and there is a correlation between vaccination rates and infection rates across Oregon counties.

Expanding the number of vaccinated people will lead to an overall reduction in new COVID-19 cases and that reduction will, in turn, free up medical resources for other patients and for procedures that have been deferred during the present crisis.

The benefits inherent in requiring all healthcare personnel, school staff, and state executive employees to be vaccinated are clear and obvious, both in terms of protecting the newly vaccinated workers themselves and, of at least equal importance, in protecting the people around them. Certain groups are unable to be vaccinated and others, most notably young children, are not yet eligible for vaccination. As Dr. Sutton explains in her Declaration, vaccinated people are much less likely to become infected or to transmit the virus and so the best protection available for Oregon's vulnerable populations is for the people around them to be vaccinated. Dr. Sutton further explained that the best available science suggests that the durability and efficacy of infection-based immunity varies widely between individuals, in contrast with the protection conferred by the vaccine. The state authorities made the reasonable decision not to exclude people who previously contracted COVID-19 from the requirements of the vaccine mandates and confined the available exceptions to those with medical, disability, or sincere religious reasons for declining the vaccine.

Whatever hardships Plaintiffs face in choosing between accepting vaccination or leaving their employment are substantially outweighed by the interests and needs of the State of Oregon and her people. The Court concludes that Plaintiffs have failed

to demonstrate that either the balance of equities or the public interest weighs in favor of the requested injunction.

In sum, the Court concludes that Plaintiffs have failed to carry their burden on any of the *Winter* factors. The Court therefore DENIES the requested injunction.

## IV.    Injunction Pending Appeal

As the Court has denied Plaintiffs' motion for a TRO, the Court turns to Plaintiffs' request for an injunction pending appeal. "The standard for evaluating an injunction pending appeal is similar to that employed by district courts in deciding whether to grant a preliminary injunction." *Feldman v. Arizona Sec. of State's Office*, 843 F.3d 366, 367 (9th Cir. 2016) (en banc).

The Court concludes that an injunction pending appeal is not warranted for the same reasons it denied Plaintiffs' request for a TRO. As discussed in the preceding sections, Plaintiffs have not demonstrated even serious questions going to the merits of their claims and balance of equities tips and sharply against the requested relief. Plaintiffs' motion in the alternative for an injunction pending appeal is therefore DENIED.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Emergency Motion for a Temporary Restraining Order, ECF No. 11, is DENIED.

It is so ORDERED and DATED this ___19th___ day of October  2021.


      /s/Ann Aiken
      ANN AIKEN
      United States District Judge